PARK FELLOWS AND ANOTHER *vs.* THE HARTFORD AND NEW YORK STEAMBOAT COMPANY.

Where a general authority has been conferred on an agent, its reservation takes effect as to third persons only after notice, and it is in general the duty of the principal to notify those persons who have had dealings with the agent.

The defendants, a steamboat company, had employed *A* as steward on one of their boats, and *A* had while so employed purchased supplies for the boat of the plaintiffs and others, by authority of the defendants and on their credit. The defendants afterwards ceased to employ *A* as steward, and advertised for proposals for contracts to board their officers and crews at a fixed price per week, and to furnish the passengers' table, the contractors to furnish all the supplies at their own expense, and entered into such a contract with *A* for one of their boats, and into a similar contract with *B* for another boat. The defendants gave no notice to the plaintiffs of the change in the manner of victualling their boats, and did not advertise such change, except by advertising for proposals as above. *A* and *B* afterwards, without the knowledge of the defendants, purchased supplies for their respective boats of the plaintiffs, who were ignorant of their contracts with the defendants, and the goods so purchased were by the direction of *A* and *B* charged to the defendants.

Held that the defendants were liable for the goods purchased by *A*, but not for those purchased by *B*.

ASSUMPSIT for goods sold and delivered; tried in the Court of Common Pleas for Hartford county (*Briscoe, J.*), facts found and reservation for advice. The case is fully stated in the opinion.

*F. Chamberlin* and *E. Hall*, for the plaintiffs, cited 1 Swift Dig., (Dutton's ed.), 323, 328; *Eagle Bank* v. *Smith*, 5 Conn., 74; *Kelley* v. *Lindsey*, 7 Gray, 287; Story on Agency, §§ 95, 443, 54, 298, 470, 56; *Green* v. *Clay*, 10 Allen, 90; Chitty · on Cont., 221; Parsons on Cont., 42; *Lester* v. *Allen*, 2 Albany Law Jour., 336; *Summers* v. *Solomon*, 21 Jurist, 962; *Fay* v. *Noble*, 12 Cush., 18; *Foster* v. *Essex Bank*, 17 Mass., 511; *Thayer* v. *City of Boston*, 19 Pick., 516; *Thurman* v. *Wells*, 18 Barb.,·500; Angell & Ames on Corp., secs. 286, 287, 288; *Nicoll* v. *American Ins. Co.*, 3 Wood & Min., 529; *Piatt* v. *Oliver*, 2 McLean, 267; *Dodge* v. *McDonnell*, 14 Wis., 553; *Hooe* v. *Mayor &c. of*

*Alexandria*, 1 Cranch C. C., 98; *Calais Steamboat Co.* v. *Van Pelt's Adm'r*, 2 Black, 372; *Schimmelpennich* v. *Bayard*, 1 Pet., 264; *Reynolds* v. *Kenyon*, 43 Barb., 585; *Munn* v. *Commission Co.*, 15 Johns., 44; *City of Davenport* v. *Peoria Marine & Fire Ins. Co.*, 17 Iowa, 276; *United States* v. *Jarvis*, Daveis, 274; *Lamothe* v. *St. Louis Marine Railway & Dock Co.*, 17 Mo., 204; *Williams* v. *Getty*, 31 Penn. S. R., 461; *Tier* v. *Lampson*, 35 Verm., 179; *Whiting* v. *Western Stage Co.*, 20 Iowa, 554.

*Hyde*, for the defendants.

SEYMOUR, J. This is an action of assumpsit on the common counts, and comes before us by reservation for our advice on a very detailed statement of facts found by the Court of Common Pleas. The questions discussed at the bar are mixed questions of law and fact. In order to a full understanding of the case the entire statement of the facts is needed, and is as follows:

The plaintiffs are a copartnership, doing business in Hartford, and sold the goods described in their bill of particulars, which were delivered by the plaintiffs on board the boats of the defendants, and were used thereon. The defendants were a corporation, organized under a charter of the State of Connecticut, and engaged in running steamers which carried passengers and freight between New York and Hartford. Two of the steamers so used were severally named "The City of Hartford," and "The State of New York." The defendants had been so engaged in business for several years, and employing said boats (among others which they were accustomed to run on said route) each season from the opening of navigation till its close in the Fall. Prior to the Spring of 1868 the defendants had been accustomed to furnish their own provisions and supplies, to board their own officers and crews on said boats, and supply meals to passengers thereon, and had required and employed stewards, or persons acting in that capacity, on each of them.

Up to this time the president of the company, or some person specially authorized by him, or under his direction, had purchased the greater part of the provisions used on said boats, but the stewards had been allowed to purchase from time to time such supplies as were deficient, in the name of the defendants and on their credit, and the bills so made had always been paid or allowed by the defendants, and usually settled for at the end of the trip, or soon after. In the Spring of 1867, and during that season, the defendants had employed Mr. Knox as keeper of their store of provisions, and he by special authority purchased a large portion of the supplies for provisioning the boats, some of them of the plaintiffs, who charged them to " the New York Steamboat Company." And from time to time during that season the plaintiffs presented their bills for such supplies, indorsed by Knox as correct, for payment to the treasurer of the company, who paid them. In the Spring of 1868 the defendants proposed to make a change, by ceasing to furnish their own provisions and supplies for their boats, and to contract with some party to board the officers and crew of each boat at a certain price per week, such contractor also to provide meals and supplies for passengers, and take the pay therefor, and the defendants advertised in newspapers in Hartford for written proposals for such contracts. None of the written proposals received were accepted, but the defendants entered into a contract with U. T. Smith, of Hartford, to board the officers of the " State of New York" at $7 per week, and the crew at $6 per week, Smith to have the right to supply the passengers with meals, and to have the use of the bar on the boat, he furnishing his own supplies and provisions. The defendants also made a contract with one Silloway, of Hartford, to board the officers and crew of the " City of Hartford," on the same terms as Smith had contracted for the " State of New York." Smith and Silloway each went on their respective boats, and accompanied them on their several trips, discharging the duties which had previously been performed by the stewards

of the boats, and severally purchased all the supplies, and procured them to be delivered upon their respective boats. Smith had for several years prior to entering into the aforesaid contract for provisioning the boat, been steward of the "State of New York," and had while so acting made purchases of the plaintiffs of goods to be used on said boat, upon the credit of the defendants, which were paid for by the defendants, as aforesaid. Silloway had never been in the employ of the defendants in any capacity. During the season of 1868 Smith and Silloway presented to the defendants their bills for the board of the officers and men, which were paid in full, weekly. During the boating season of 1868 Smith procured of the plaintiffs goods for which there remains due a balance of $13, which were by his directions, delivered on board the "State of New York," and used thereon, and were charged by direction of Smith on the plaintiffs' books to the "State of New York." And Silloway made similar purchases of the plaintiffs, which were by his direction charged to the steamer "City of Hartford," and delivered upon said boat, and for which there is now a balance due. It appeared that the plaintiffs were not aware of the contracts that had been made between the defendants and Smith and Silloway, and charged the goods as directed supposing they were selling to the Hartford and New York Steamboat Company, and would not have given credit to either Smith or Silloway, who were pecuniarily irresponsible. The plaintiffs had, the year previous, by direction of the stewards or other persons purchasing for the boats, charged the goods to the "New York Steamboat Co." The defendants did not give special notice to the plaintiffs of any change in their mode of victualling their boats, nor did they advertise the same in the newspapers, or otherwise, except the before-mentioned advertisement for proposals. The defendants gave no express authority to either Silloway or Smith to contract any bills in their name, and had no knowledge that they had done so until after the bills had been contracted.

We think the defendants are liable for the goods purchased by Smith. It appears that he had been their steward, and had on their credit purchased goods of the plaintiffs to be used on the boat, and that the defendants had paid for the goods thus purchased, without objection. The goods for the price of which this action is brought were charged to the defendants, the plaintiffs supposing they were selling them to the defendants, and credit would not have been given to Smith, he being pecuniarily irresponsible. The defendants then had treated Smith as their servant, and represented him as authorized to make purchases on their credit. The case is the common one where the liability of the master is established by the authorities, unless it can in some important particular be distinguished. The defendants rely on several circumstances as sufficient to create a difference; before considering which we will briefly notice some principles and rules which have been adopted in this class of cases.

It is well settled that where a general authority has once been conferred, its revocation takes effect as to third persons only after it becomes known to them, unless indeed the principal has done his full duty in making it known; and where an authority is revoked, it is in general the duty of the principal to notify those persons who have had dealings with the agent as such; the rules on this subject being substantially the same as those relating to the dissolution of a copartnership, and the power of a partner after dissolution to bind the firm. Story Agency, § 470, 471. 1 Parsons Contracts, 59, 60.

Now in regard to Smith, it appears that he for several seasons was authorized to bind the defendants by contracts with the plaintiffs similar to that on which this suit is brought, and that the defendants have done nothing to notify the public in general, or these plaintiffs in particular, of any revocation of authority, and that the plaintiffs were not in fact aware of a revocation.

The defendants however insist that there were circumstances which ought to have put the plaintiffs on inquiry, and it is certainly true that the manner of dealing under which the

account in suit accrued was somewhat different from what it had been in previous years. But we see nothing at all equivalent to notice of the withdrawal of Smith's authority. The advertisement relied upon was merely for proposals for letting the stewardship out upon contract. Even if the plaintiffs had seen the advertisement, they could not know that any proposals were made, or that if made they were accepted or acted upon. The advertisement was not intended as a notice of authority withdrawn, and in our judgment it falls far short of such a notice as was necessary.

In respect to the goods purchased by Silloway, the facts are very different from those in Smith's case. Silloway had never acted as the defendants' agent, and never was in fact their servant. The plaintiffs' claim in this branch of the case, is that the defendants had by their previous conduct given a general authority to their stewards, as such to bind them by the purchase of provisions to be used on the boats; that the defendants gave to Silloway the apparent place of steward, and are therefore bound by his contracts as such. The case is likened to that of a bank which allows some one to appear as its teller at the teller's desk, and thereby holds him out as authorized to act in that capacity. It is undoubted and familiar law that if I hold one out to the world as my agent I am bound by his acts as such, and there are some facts which tend to show that Silloway was held out to the plaintiffs as being steward, and thereby authorized to bind the defendants by the contract relied on. But it does not appear that the defendants ever intentionally represented Silloway as their servant. They did not clothe him with the appearance of being steward in order to give him credit. They merely made a contract, which we suppose is not unusual, whereby the duties which had previously been performed by stewards as agents of the company, were now performed by contractors not agents of the defendants. It may pertain to the office of the teller of a bank to perform certain functions for the bank, but we do not know that it pertains to the office of steward of a boat as such to bind the owners by contracts for supplies. Nor can

we say on the proof that these defendants had given the plaintiffs to understand that stewards of their boats as such were invested with that authority.

In order to charge the defendants for Silloway's contracts, the plaintiffs must show, first, that he was in fact their servant, which it is admitted he was not, or, second, that the defendants voluntarily and purposely gave him an appearance of authority to bind them, which cannot be claimed, or, third, that the defendants' acts were such as naturally to give Silloway the appearance of having authority, so much so that the defendants must be regarded as negligent and blameworthy in allowing such appearances to exist. We cannot say that there is evidence of such blameworthiness. It seems indeed that the plaintiffs charged the goods to the defendants believing that Silloway was their authorized servant. But we think that belief must have arisen more from over confidence in Silloway's assurances than from any conduct of the defendants justifying such belief.

We advise that judgment be rendered for the plaintiffs for the goods delivered to Smith, and for the defendants in respect to the supplies furnished to Silloway.

In this opinion the other judges concurred.