# CHARLESTON.

## WERNER COMPANY v. CALHOUN.

Submitted March 1, 1904—Decided March 8, 1904.

1. MERCHANT—*Former Dealer—Notice.*

A retail merchant who, after conducting his individual business as such merchant under a name and style similar to those commonly used by co-partnerships and corporations, sells his store to another who continues to carry it on under the same name and style. purchasing in the name under which the business is conducted, goods from the former dealers of his predecessor, must give such former dealers notice of his retirement from the business to avoid liability for the purchase money of goods so purchased after his retirement, unless, before such subsequent sales, such former dealers had knowledge of the change of proprietorship of the store. (p. 251).

2. MERCHANT—*Style of Firm—Evidence—Notice.*

A former dealer is, in such case, entitled to actual notice and publication thereof in a newspaper and changing the name of the proprietor on the sign at the place of business do not constitute notice to him. (p. 252).

3. MERCHANT—*Notice—Evidence—Change of Name.*

On an issue as to whether or not actual notice was given in such case, notoriety of the fact of the change of proprietorship in the town in which the business is carried on is not admissible evidence, unless connected with other facts which, together with it, form a sufficient basis for a finding by the jury of actual knowledge on the part of the former dealers; nor is it permissible to show that, before the retirement, checks given in

payment of bills bore the signature of the proprietor of the store, and, after the sale, the name under which the business was carried on for signature. (p. 253).

4. INSTRUCTIONS—*Error*.

It is proper for the trial court to refuse instructions so framed as to direct inquiries by the jury as to facts not material or relevant to the issue, as their tendency is to mislead and confuse the jury. (p. 253).

5. VERDICT—*Instruction*.

A verdict will not be disturbed for want of a proper instruction, unless it was requested and refused, nor for failure of the trial court to so modify an improper instruction requested as to make it proper and then give it, unless it can be seen that such failure, for some reason, such as other incomplete instructions given, may have prejudiced the party requesting it.

Error to Circuit Court, McDowell County.

Action by the Henry C. Werner Company against A. L. Calhoun and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

RUCKER, ANDERSON & HUGHES and STROTHER, TAYLOR & STROTHER, for plaintiff in error.

D. E. JOHNSTON and R. C. & B. McCLAUGHERTY, for defendant in error.

POFFENBARGER, PRESIDENT:

A. L. Calhoun, doing business at Keystone, McDowell County, under the name and style of "Union Bargain House," which name, together with the addition, "A. L. Calhoun, Proprietor, H. A. Womack, Manager," was displayed on a sign on the front of the building in which the business was carried on, began to purchase boots and shoes from the Henry C. Werner Company, of Columbus, Ohio, in June or July, 1898, at the solicitation of W. T. Watkins, its traveling salesman, and continued to do so at intervals, and also to run and operate the said store, until the first day of September, 1899, on which day he sold the store to C. Womack, a brother of H. A. Womack, who seems to have been about the store prior to that time, and, just before the

transaction, as well as afterwards, as late as December 27, 1899, goods were bought of the Werner Company and put into the store, without any notice, as the company claims, of the sale by Calhoun to Womack. This action was brought against Calhoun to recover the balance due on account of the purchase money of a part of the goods, and a judgment was rendered in the plaintiff's favor for the sum of $465.95, from which Calhoun seeks relief on the ground of alleged errors committed by the court in overruling his motion to set aside the verdict; in refusing to give two instructions asked for by him; in admitting certain testimony on behalf of the plaintiff objected to by him; and in sustaining objections on the part of the plaintiff to certain evidence offered by him.

The two instructions refused form the basis of the principal part of the argument in the brief for the plaintiff in error. They read as follows:

"2. The court instructs the jury that before they can find for the plaintiff in this case, they must believe from the evidence in this case that H. A. Womack, at the time of the purchase of the goods, the price for which this action is instituted, was the agent of A. L. Calhoun, and as such agent had authority to purchase the said goods, or that the said Calhoun received and accepted said goods and unless they do believe, from the evidence, that the said Womack was the agent of said Calhoun, and had authority to purchase the said goods, or that the said Calhoun received the goods and accepted them, then they must find for the defendant."

"3. The court instructs the jury that if they believe from the evidence in this case that The Henry C. Werner Co. or W. T. Watkins, the salesman of said company, knew that the said H. A. Womack was the agent of said A. L. Calhoun, and that the goods were purchased by said Womack, it was the duty of the plaintiff to ascertain the extent of the agency of said Womack; that they dealt with said Womack at their own risk, and if they believe from the evidence that the said Womack exceeded his authority as agent for said Calhoun, then they must find for the defendant in this case, even though they may believe that said Calhoun was the owner of The Union Bargain House at the time of the purchase of said goods."

Some of the goods were purchased before, and some after, the

sale by Calhoun to Womack. It will be observed that instruction No. 2 says the jury must find for the defendant unless they believe that, at the time of the purchase of the goods, Womack was the agent of Calhoun with authority to purchase the goods, or that Calhoun received and accepted the goods. It being conceded by the plaintiff and admitted by the defendant that the sale had been made on or about the first day of September, 1899, prior to the purchase of a large portion of the goods, for the price of which this suit was brought, it is clear that, in strictness of law, Womack was not the agent of Calhoun then, and that Calhoun did not receive the goods. But it does not follow, as will be shown, that he could not be liable for the price of the goods, notwithstanding these facts. Hence, the instruction, if given would have tended to mislead the jury by directing their inquiries to immaterial facts. Instruction No. 3 is bad for the same reason. The real question involved, and the one decisive of the case, is not want of agency in Womack nor the extent of his agency at the time of the purchase. The instruction suggests the ownership of the store by Calhoun at the time of the purchase of the goods, a matter admittedly not true, and presents to the jury the inquiry as to whether Womack was his agent as such owner and the extent of that agency.

A proper instruction, directing an inquiry by the jury as to what were Womack's powers as agent of Calhoun before September 1, 1899, and a finding in favor of the defendant as to the purchase money of goods bought after that date, if they believed from the evidence that the plaintiff or its agent knew Womack had had no authority to purchase goods for the store, while the defendant owned it, could. have been so framed as not to have been objectionable on the ground of tendency to mislead or confuse the jury, and the court would no doubt have given it, had a request therefor been made. On that issue evidence for both parties was introduced, but it is well settled law that a verdict will not be disturbed for want of a proper instruction not asked for. Nor is the court bound to modify an improper instruction asked for so as to make it good and then give it. *Gas Co.* v. *City of Wheeling,* 8 W. Va. 320; *Rosenbaum* v. *Weeden,* 18 Grat. 785.

The only real issue in the case is whether, upon retiring from the business of the "Union Bargain House," Calhoun gave

notice to the dealer from whom he had been buying goods before the severance of his relations with that store, so as to relieve himself from liability for goods sold to it thereafter. Counsel for plaintiff in error do not deny that it was his duty to give such notice, but they insist that sufficient notice was given, but what is relied upon as notice is not such as is customary under the circumstances. According to his own testimony, Calhoun published notice of his sale in a local newspaper, and the sign in front of the store was changed so as to read, "Union Bargain House, C. Womack, Proprietor, H. A. Womack, Manager," after which, and before some of the sales were made, Watkins was frequently at the store, but is not shown to have read the sign. Then he says he had a conversation with Watkins in the month of September, 1899, on a train between Welch and Keystone, in which Watkins made inquiries about the financial standing and reliability of the Womacks. In addition to this, John Cobbs testifies that Watkins came to him about a month after the sale and asked him about the Womacks, wanting to know if he would be safe in selling to them. He further says Watkins asked him if Calhoun was with them and was told that witness did not think he was as they had changed the sign. Watkins does not deny the conversation on the train or the conversation with Cobbs, but he says they occurred in July, 1900, long after the making of the last sale of goods, and that his first information of the sale of the store was derived from Calhoun the day he met him on the train. Another witness, H. A. Womack, says he notified Watkins of the sale soon after it was made. But Watkins denies it.

Calhoun testifies that, while he owned the store, he paid the plaintiff by his personal checks, and the proof is that, after the date of the sale thereof, checks were sent to the plaintiff signed "Union Bargain House." He offered to introduce in evidence one of the checks sent by him to the plaintiff, but the court excluded it. The court also refused to allow one of his witnesses to answer the following question: "Do you know whether or not it was generally known in that town at that time that A. L. Calhoun had sold out?" These rulings are excepted to. Whether the court erred, and if so, whether the error is prejudicial, calling for a reversal of the judgment, depends upon the character of the notice which the law requires in such cases.

The same principle governs here as in the case of the dissolution of a copartnership. "The law says that actual notice must be brought home to former customers of the firm, and notice by publication to the other persons. The meaning of these loose phrases will be discussed hereafter; the reason of them is as follows: One class of persons has become acquainted with the firm, and, by presumption of law, with its membership, so far, at least, as this is not dormant. These are entitled to the same certainty of notice of dissolution as they had of its existence, which is actual knowledge. The rest of the world, i. e., that part of it which has not given credit to the firm because acquainted with the fact of its existence from reputation, hearsay, or their own observation. And this is to be counteracted by a publicity of the same sort, and at least measurably as widely spread, viz., proper publication, generally by advertisement in the proper newspaper. It is true that the latter class may be as much misled by want of actual knowledge of dissolution as the dealer class, yet the partners cannot know who such persons are, and if more than constructive notice were required, a partner would in the often quoted language of Lord Kenyon, in *Abel* v. *Sutton*, 3 Esp. 108, "never known when he was to be at peace and freed from all the concerns of partnership.'" Bates on Part, section 606. "One who has previously sold goods to the firm on credit is undoubtedly entitled to actual notice; all the foregoing phrases— actual dealer, former customer, creditor, or one who has trusted—will include him." *Id.* section 613. "If a partner contracts in the name of a firm, with a third person, after the partnership is dissolved, but that fact is not made public or known by such third person, the law considers the contract as being made with the firm, and upon their credit; and they are all bound." *Dickinson* v. *Dickinson*, 25 Grat. 321.

Though this is not the case of a retiring partner, the rule in such case governs it. "Where one who has carried on business alone, under a firm name, sells the business to his son, who continues the business under the same name, the former is liable for goods purchased by the latter from an actual dealer with the former, who has no knowledge or notice of the transfer." *Elterson* v. *Leeds*, 97 Ind. 336, (49 Am. Rep. 458). An analogous case is that of *McGowan* v. *American Tan Bark Co.*, 121 U. S. 575, in which the following instruction was approved as having

correctly stated the law: "If the jury find, from the evidence, that the defendants were, prior to June 23, 1881, doing business as partners under the name of 'The McGowan Pump Company' or 'McGowan Pump Co.,' and that plaintiff dealt with them before said date as such partners, and had no knowledge of any change in said business, then said contract is the contract of defendants, and defendants cannot avoid or escape liability thereon, even if on that date a corporation existed called 'The McGowan Pump Company,' with which defendants may have been connected, and to which they had turend over their entire partnership business and assets."

What is actual notice to which the dealer is entitled, and admissible evidence thereof, are questions now to be determined. The former is one of fact and not of law. No particular form or method of giving such notice is prescribed by law, although the usual mode is by letter to the dealer, apprising him of the fact of retirement. *Vernon* v. *Manhattan Co.,* 17 Wend. 528. In the same case, on appeal, 22 Wend. 194, Senator Wager said: "As to persons having prior dealings, notice is usally given by a circular sent to all correspondents of the house, or in some other mode by which knowledge of the dissolution may be brought to the creditor." *Dickinson* v. *Dickinson,* 25 Grat. 321, holds: "Though a public notice of dissolution may be sufficient as to persons who have had no prior dealings with the firm, a person who has had such dealings must have notice, or *actual knowledge* of the dissolution, to release the partners who did not make or authorize the making of the note." In the opinion, Judge Staples said: "If actual knowledge of the dissolution is brought home to the party, he will be concluded, although no notice whatever may have been given, whether in such case the evidence is sufficient to justify the inference of actual knowledge, is a question of fact for the consideration of a jury, under the supervision of the court. *Irby* v. *Vining* 2 McCord's R. 379; *Coddington* v. *Hunt,* 6 Hill's R. 595; Collyer on Partnership, section 332." But manifestly the evidence must be more than sufficient to raise a mere suspicion of notice. It must be at least presumptive notice, calling for rebuttal. Accordingly it has been held that notoriety among business men and in the trade, much less in a community, is no evidence of actual notice, and is, therefore, inadmissible on the issue of actual knowledge

of retirement. *Central National Bank* v. *Frye et als,* 148 Mass. 498; *Pilcher* v. *Barrows,* 17 Pick. (Mass.) 361; *Goddard* v. *Pratt.* 16 Pick. (Mass.) 412. In *Pitcher* v. *Barrows,* it seems to have been held inadmissible on even an issue of constructive notice which is binding except as to former dealers.

Upon this view of the law it is apparent that the court did not err in excluding the check. The change in the signature from "A. L. Calhoun" to "Union Bargain House," if noticed, would have imported nothing more than a change in the form of the bank account, or that Calhoun has two such accounts, either of which theories would have been clearly consistent with his continued ownership of the store. An inquiry from the plaintiff as to the reason for the change would have been an impertinence. The proposed evidence of notoriety of the change of ownership in the town of Keystone was no evidence, as has been shown, of actual knowledge or notice to the plaintiff of the fact, although its agent was frequently in the town, without direct evidence of his knowledge of the currency of the rumor, which might possibly have sufficed to put him on inquiry, but there is no evidence of such knowledge.

On the two issues of the extent of Womack's agency while Calhoun owned the store, and notice of the sale by Calhoun to C. Womack, the evidence is conflicting and the credibility of the witnesses is involved. On a motion to set aside a verdict, the trial court has a wider discretion than has this Court. *Miller* v. *Insurance Co.,* 12 W. Va. 116; *Ruffner* v. *Hill,* 31 W. Va. 428; *Grayson's Case,* 6 Grat. 712. But even there, the power should be cautiously exercised, and this Court will reverse the action of the court below in granting a new trial, "when the evidence is contradictory, if, when most favorably considered in support of the verdict, it does not still appear, that the verdict was plainly not warranted by the evidence." *Gwynn* v. *Schwartz,* 32 W. Va. 487; *Reynolds* v. *Thompson,* 23 W. Va. 229; *Johnson* v. *Burns,* 39 W. Va. 658. Where there is conflicting testimony, and the jury has to decide on the credit of witnesses, the power of the court to grant a new trial ought to be very cautiously exercised. *Brugh* v. *Shanks,* 5 Leigh 598. Whether there was actual notice depends upon questions of veracity between Watkins and Womack, Watkins and Calhoun and Watkins and Cobbs, and, although there were three against

one, the transactions were separate, and the demeanor of the witnesses on the stand, in the presence of the jury, enters into the question. The preponderance or weight of evidence is not determined by the number of witnesses on the one side, as against those on the other. Moreover, Watkins is corroborated by at least one circumstance. He wrote to his principal, July 6, 1900, saying, "I find today for the first time that A. L. Calhoun sold out to Womack Brothers last September on the 30th and took a deed of trust on the stock to secure himself." This was not evidence manufactured on the witness stand, nor does it bear the impress of manufactured evidence at all. It carries on its face probability of truth as to the date of discovery, for even then his information was inaccurate.

On the question of the extent of Womack's agency, the evidence is equally conflicting and the proof dependent upon the credibility of the witnesses, Watkins being corroborated by circumstances, and Calhoun's testimony more or less inconsistent Watkins says he never saw Calhoun but once, but sold to Womack on several occasions, and part of his testimony was delivered while holding in his hands the original orders which showed that he had made the sales at the store. Calhoun says he notified the company about six months before he sold out not to sell anything more to him except upon his personal order, but he had not paid for all the goods that were put in the store prior to the date on which he sold out and he does not specify any bill that was ordered by Womack without authority. At the same time, he protests that he has paid all the bills he owes the plaintiff. The goods had been put into the store presumably with his knowledge and sold by him along with the balance of his stock. Upon this state of the evidence, the Court cannot disturb the finding of the jury.

For the reasons aforesaid, the judgment will be affirmed.

*Affirmed.*