# CHARLOTTE GRANBERG v. MAUDE GILMORE PITZ (ALSO KNOWN AS MARY GRAVELLE) AND ANOTHER.[1]

July 12, 1935.

No. 30,277.

*Keller* and *Chapin,* for appellant.
*Frank J. Danz,* for respondent.

[1]Reported in 262 N. W. 166.

138

DEVANEY, CHIEF JUSTICE.

This is an action to enjoin the foreclosure of a $2,300 mortgage on the ground that $1,500 of the principal thereof has been paid. Plaintiff is the mother of one Henry Granberg, an attorney and real estate dealer. Defendant was, at the time of the transaction here involved, the wife of said Henry Granberg and, by virtue of this relationship, plaintiff's daughter-in-law. Plaintiff is and was the owner of a certain lot in St. Paul, Minnesota, on which defendant held and now holds a mortgage for $2,300. In November, 1932, defendant commenced foreclosure of the same by advertisement. It is the claim of plaintiff that on October 15, 1930, she paid $1,500 principal on the mortgage to Granberg, her son, who was at the time duly authorized by defendant, his wife, as agent, to accept such payment. It is undisputed that Granberg and his wife, the defendant herein, had since sometime in 1925 been jointly engaged in the real estate business. During these years defendant had spent most of her time in Minot, North Dakota. She visited Granberg only on occasions. Granberg, who resided in St. Paul, Minnesota, acted as defendant's agent for all purposes of investing her money and handling her affairs. During this time Granberg was authorized to execute instruments, to receive and collect all moneys due and owing, and to reinvest the same. As agent he had full managerial powers in all dealings on defendant's behalf. Since the death of plaintiff's husband, Granberg's father, Granberg had also acted as agent for plaintiff in handling property acquired by her as devisee under her husband's will.

Plaintiff testified that at the time of making this principal payment Granberg came to her with $1,500 cash. This money he had collected on plaintiff's behalf from the estate of her late husband. Plaintiff thereupon gave the $1,500 back to Granberg with instructions to him to credit this amount on the mortgage held by defendant. Granberg indorsed this $1,500 payment on the mortgage note. This was October 15, 1930. In January, 1931, defendant brought an action against Granberg seeking to dissolve the business and to have an accounting for her share of the assets. This action was settled out of court between the parties. Prior to this time no

accounting had ever been had between Granberg and defendant. November 19, 1932, defendant and Granberg became legally divorced.

Defendant contends that she never received the $1,500 payment and that at the time of the transaction whereby plaintiff claims to have paid Granberg $1,500 Granberg was no longer her agent. She offered to prove by testifying to a conversation had with Granberg that she had verbally revoked Granberg's authority some time prior to the date of the $1,500 payment. The court excluded this offer.

It is undisputed that the mortgage note, accompanying the mortgage which defendant holds and now seeks to foreclose, contains an indorsement in Granberg's handwriting of this $1,500 principal payment, made October 15, 1930. The only question is whether or not, at the time of making this payment, Granberg was defendant's agent for the purpose of receiving it. The trial court found that the $1,500 payment had been made and that Granberg was at the time defendant's fully authorized agent for purposes of receiving the payment. He ordered judgment for plaintiff, thereby enjoining defendant from foreclosing the mortgage for more than $800 plus interest. From a denial of her motion for a new trial defendant appeals.

Two questions are presented:

(1) Is the evidence sufficient to sustain the finding that payment had been made and that Granberg was defendant's agent for purposes of receiving the same?

(2) Was it error to exclude defendant's offer to prove a revocation of Granberg's agency by testifying as to conversations had with Granberg prior to the date of the $1,500 payment?

1. We think the evidence was amply sufficient to support the finding that plaintiff paid Granberg the $1,500. She testified that Granberg turned $1,500 over to her; that this was her money; and that she thereupon immediately gave it back to Granberg with instructions to him to apply it on the mortgage which defendant held. Further, the indorsement of this payment in Granberg's handwriting appears on the back of the note. Certainly this evidence supports a finding that the payment was made.

From all that appears in the record, the finding that Granberg was defendant's agent at the time of receiving payment was amply justified. It is admitted that Granberg had been defendant's agent for all purposes of handling her property and investing her money since sometime in 1925. There is nothing in the record to show a revocation of this agency until January, 1931, at which time defendant brought the accounting suit against Granberg. The $1,500 payment had been made several months prior to the bringing of this suit, which resulted in a dissolution of the business and a termination and revocation of the agency. In the absence of a showing that the agency had been revoked or terminated prior to the time that plaintiff made the payment to Granberg, it will be presumed that Granberg was still defendant's agent and authorized to receive this payment.

2. To refute the ·fact that Granberg was defendant's agent at the time plaintiff made the $1,500 payment, defendant sought to show a prior termination of Granberg's authority. Her attorney offered to have defendant testify as to conversations had with Granberg some time prior to October 15, 1930, the date of the $1,500 payment, during which conversations it is claimed defendant verbally revoked Granberg's agency and notified him that he was no longer to handle her property or her affairs. This offer of proof was objected to and excluded by the trial court on the ground that such matter was not admissible under 2 Mason Minn. St. 1927, § 9814. This statute provides that one spouse shall not be permitted to testify for or against the other without the other's consent. Plaintiff contends that this statute is all-inclusive and excludes any testimony as to any conversation had between any husband and wife unless the other spouse consents thereto and unless such consent be affirmatively shown. Defendant, on the other hand, argues that the statute is not all-inclusive and does not exclude conversations had between husband and wife where one is the agent of the other in business dealings. She also urges that where one spouse attempts to testify against the other, only the other spouse can object, not a third party, and hence, since it was not her husband, but plaintiff, a third party, who raised the objection in this case, the evidence should have been admitted.

.We specifically do not decide these questions. We think there was no prejudicial error in excluding the offered proof, but our opinion is based entirely upon different reasons than those urged upon us by counsel in this case. We do not hold, as far as the above mentioned statute is concerned, that the evidence should or should not have been admitted, but only that if it had been admitted rather than excluded and if it were now a part of the record it would not in the least affect the result to be reached in this case.

It is well established that where a principal revokes the authority of his general agent he must notify third persons who have dealt with the agent or who know of his authority and are apt to deal with him in order to make the revocation or termination effective as to them. So where a general agency is revoked, the agent can still bind the principal if dealing with such third parties who have no notice. The third party who has dealt with the agent previously or who knows of the agent's authority and can reasonably be expected to deal with him can hold the principal responsible even though the principal has given the agent notice of termination if such third party has received no notice thereof. The following authorities so hold: Scott v. Law, Union & Rock Ins. Co. (Tex. Com. App.) 12 S. W. (2d) 147; Southern L. Ins. Co. v. McCain, 96 U. S. 84, 24 L. ed. 653; Claflin v. Lenheim, 66 N. Y. 301; Werner Co. v. Calhoun, 55 W. Va. 246, 46 S. E. 1024; 1 Mechem, Agency (2 ed.) p. 448, § 628; see 13 Minn. L. Rev. 741; collection of cases in 14 A. L. R. 846. As was said in Fellows v. Hartford & N. Y. Steamboat Co. 38 Conn. 197, 201:

"It is well settled that where a general authority has once been conferred, its revocation takes effect as to third persons only after it becomes known to them, unless indeed the principal has done his full duty in making it known; and where an authority is revoked, it is in general the duty of the principal to notify those persons who have had dealings with the agent as such, the rules on this subject being substantially the same as those relating to the dissolution of a copartnership, and the power of a partner after dissolution to bind the firm."

So in Scott v. Law, Union & Rock Ins. Co. (Tex. Com. App.) 12 S. W. (2d) 147, the defendant insurance company revoked its agent's authority. Subsequently, the plaintiff, who had no notice of the revocation, secured a waiver of one of the clauses in a policy from that agent. The plaintiff had had prior dealings with this agent. It was held that the act of the agent bound the principal even though performed after the revocation of the agent's authority.

Where the agency is a special one created for the doing of a special act, it has been held that the rule is otherwise. 1 Mechem, Agency (2 ed.) p. 449, § 629. But nearly all authorities agree that third parties who have had prior dealings with a general agent or who know of his authority and may reasonably be expected to deal with him must be given notice or else the agent's acts, even though performed after the revocation, bind the principal. The theory behind this rule is that an apparent agency continues to exist as to third parties until notice is given them. The principal has originally cloaked his agent with authority and authorized him to represent himself as an agent. Those persons dealing with the agent may reasonably rely upon this representation until notified of a termination of the relationship. The view we here take has been adopted by the American Law Institute in Restatement, Agency, § 127, wherein it is said:

"Unless otherwise agreed, if the principal has manifested that an agent is a general agent, the apparent authority thereby created is not terminated by the termination of the agent's authority by a cause other than incapacity or impossibility, unless the third person has notice thereof."

Applying these principles to the case at bar, we ascertain that Granberg was defendant's general agent and had been since sometime in 1925. He had general authority to handle all defendant's investments, estimated at approximately $100,000, to receive moneys, and to reinvest the same. On numerous occasions defendant executed instruments in blank and gave them to Granberg. She trusted him to use his own judgment in business matters. He was in all respects a general agent.

It is clear also that plaintiff, Granberg's mother, was in the position of one who had had prior dealings with defendant's agent and relied upon his apparent authority. She knew that her son was the general agent for his wife, defendant herein. Defendant held a mortgage on plaintiff's property and could well expect that plaintiff would continue to think that Granberg was her agent until notified to the contrary. If plaintiff and defendant be not considered as having had prior dealings, at least plaintiff was one who knew of Granberg's authority and whom defendant could reasonably expect to deal with him.

There is nothing in the record at all to indicate that defendant gave plaintiff any notice prior to the date that plaintiff made the $1,500 payment of her attempted revocation of Granberg's agency. There is no indication that plaintiff received such knowledge from any other source. The burden of proving that notice was given is always on the principal. Foddrill v. Dooley, 131 Ga. 790, 63 S. E. 350; Perrine v. Jermyn, 163 Pa. 497, 30 A. 202. So, even if defendant's testimony as to conversation had with Granberg in which she claims to have verbally revoked and terminated his agency were admissible regardless of the statute as to conversation between husband and wife, still it would not help defendant any. Under the facts of the case she was bound to notify plaintiff and other persons in plaintiff's position of the fact of termination. There is not a whit of evidence to show that she did this or that plaintiff ever received notice of the termination through any other channels. Consequently it was not prejudicial to defendant to have this evidence excluded; for, even had it been admitted, it would have no probative value in this case and would not have changed the decision in the least.

In considering this case we have disregarded the point attempted to be made by defendant that in reaching a settlement between defendant and Granberg and portioning out the assets this mortgage was treated as though the $1,500 payment had not been made. Plaintiff had nothing to do with this suit, was not served in the action which was begun and later dismissed, and in fact knew nothing of the whole transaction. Nothing done at that time by

Granberg and defendant could bind plaintiff or affect her rights in any manner. We conclude that the evidence was sufficient to support the finding made by the lower court and that the offer of proof was properly excluded. Therefore the order appealed from must be and the same hereby is affirmed.