# CHARLESTON.

WHORLEY *v.* RALEIGH LUMBER COMPANY.

Submitted March 25, 1910.   Decided December 12, 1911.

1.   MASTER AND SERVANT—*Injuries to Servant—Appliances—Care Required.*

A master does not owe to his servant engaged in using appli-

ances furnished by the master in building a saw mill the same degree of care in furnishing safe appliances as he would owe in case of a completed and operating mill.   (p. 124).

2.   SAME.

The rule of law is not that a master must furnish to his servant reasonably safe machinery, appliances or instrumentalities for work; but it is that the master must exercise reasonable care and diligence to furnish reasonably safe machinery, appliances and instrumentalities.   (p. 125).

3.   SAME—*Injuries to Servant—Care Required—Burden of Proof.*

In an action by a servant against a master for injury from a defect in an appliance, machine or instrumentality furnished by the master, it is incumbent on the servant to show such defect and that the injury comes from it.. If it might have come from one or another cause, for one of which the master is not liable, there can be no recovery. Recovery cannot rest on mere surmise or conjecture as to the cause or source of the injury.   (p. 127).

Error to Circuit Court, Raleigh County.

Action by George W. Whorley against the Raleigh Lumber Company.   Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*Vinson & Thompson, James J. Divine, and McGinnis & Hatcher,* for plaintiff in error.

*Farley, Sutphin & Ward,* for defendant in error.

BRANNON, JUDGE:

Raleigh Lumber Company had about completed a new mill. It was engaged in putting in its place a pipe of considerable length running from the boiler to some part of the saw mill for the conveyance of steam, and was adjusting and testing the pipe. Steam was turned on into this pipe, and it disclosed a leak between two sections of the pipe.   Steam was turned off, and George W. Whorley, a workman who had been employed in the construction of the mill, was engaged at the point of leakage in tightening up a flange coupling which was leaking, when an ell bursted at his feet, and a large quantity of steam, which had been turned on again, escaped and badly burned Whorley. In an action brought by him against the lumber company he

recovered verdict and judgment for $3,000, from which the lumber company has sued out a writ of error.

Much argument is made to sustain a demurrer to the declaration overruled by the court. We think the declaration is good. It involves nothing necessary to be here stated.

Instruction No. I for the plaintiff is excepted to. It reads as follows: "The court instructs the jury that the duties of the master to provide a reasonably safe and suitable machinery and appliances for the business and to furnish a safe place in which his servant is to work are duties which the master can either perform personally or delegate their performance to some one else; but if both the master and the person to whom such duties are delegated fail in the performance of any of said duties, and injury results to the servant by reason of said failure, the master is liable for such injury." This mill was yet incomplete. It was not yet in actual operation. The piping that was being put down was indispensable for the operation of the mill. Whorley was helping to put that pipe in place. The objection to this instruction is that it sets up a standard of duty of the employer applicable to a complete operating mill. It demands of the employer the same degree of duty as to machinery exacted of an owner of a running mill. The principle governing the trial seems to be wrong. The trial was upon an erroneous theory, that of a running mill. You cannot exact of a mill builder that high degree of care as to good machinery or appliances, when they are being put up and tested, as if completed and running. You cannot demand the same degree of duty as to a new and untried pipe, when being put down and tested, as you could in the case of a steam pipe in a finished an operating mill. Labatt on Master and Servant, § 29 says: "It is well settled that, where the instrumentality which caused the injury was still incomplete at the time of the accident, and the injured servant was engaged in the work of bringing it to completion, the question whether the master was in the exercise of due care is determined with reference to a lower standard than that which is applied in the case of instrumentalities which have been put in a finished condition and are in regular use in the normal course of the business. A similar qualification of the master's liability is admitted

where the injured servant was hired for the express purpose of assisting in the repair, demolition, or alteration of some instrumentality, and the unsafe conditions from which the injury resulted arose from or were incidental to the work thus undertaken by him." In *Armour* v. *Hahn*, 111 U. S. 313, it was held: "The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not oblige him to keep a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as its safety depends on the due performance of that work by them and their fellow servants."

There is another objection to that instruction. It says that the master must provide "a reasonably safe and suitable machinery and appliances for the business." This makes the master guarantee the safety of the pipe. The law is that it is the duty of the master to use reasonable care and diligence to furnish suitable machinery and appliances. In *Omer v. Zadek*, 120 Ill. App. 444, an instruction like this one was given. The court said: "Under the instruction the jury may have found for the plaintiff, if they believed from the evidence that the machinery was not reasonably safe, even though the appellant used the utmost diligence to procure a safe machine, and even though there was no defect discoverable by the exercise of ordinary diligence. This is not the law. The master's obligation is not to supply the servants with absolutely safe machinery or any particular kind of machinery; but his obligation is to use ordinary and reasonable care not to subject the servant to extraordinary and unreasonable danger. The law imposes upon the company the obligation to use reasonable care and diligence in providing suitable and safe machinery." In *Belleville Pump Works* v. *Bender*, 69 Ill. App., the court says: "The second instruction given for the plaintiff was erroneous. It told the jury that it was the duty of the master to furnish his servants with tools and appliances that were reasonably safe. The law is that he is only required to use reasonable and ordinary care and diligence in providing suitable and safe machinery. *Camp Point Co.* v. *Ballou*, 71 Ill. 421." In *Wonder* v. *B. & O.*, 32 Md. 411, 3 Am. R. 143, it is stated that: "All that can be required of the master is that he should use due and

reasonable diligence in providing safe and sound machinery." In *Southern Ry. Co.* v. *Mauzy*, 98 Va. 692, it is held that: "It is error to charge in an action by an employee for injuries received that one of the personal duties of the master is to furnish safe and sound macinery for the use of the servants, since it is his duty to use only ordinary care and diligence to provide reasonably safe and suitable machinery." Much law sustains this position. *Atlantic & D. Ry. Co.* v. *West,* 101 Va. 13; *Parlett* v. *Dunn,* 102 Va. 459. The rule is so stated in 9 Encyclopedia Digest of Va. & W. Va. R. 674.

Another objection to instruction No. 1 is that it requires the defendant to furnish a safe *place* for work. The plaintiff had been, and at the time of the injury was, working in the construction of this new mill. Could he expect a safe place to work in when the mill was in process of construction? But that is not all as to this feature of the instruction. There was no evidence as to the unsafety of the place, or of that being the cause of the misfortune. If the evidence tends to show anything as the cause of the accident it is the want of drain holes in the ell of the pipe. That only is alleged by the plaintiff as such cause. This instruction makes the safety of the place of work an element to be passed on by the jury. It tended to mislead the jury. This instruction told the jury that the master must furnish a safe place for work when he was only bound to use care to do so, as in the case of suitable machinery. And this instruction did not suit the case of an incomplete mill. It strikes me that this instruction is also wanting in failing to put to the jury the question whether the master knew or should have known of the alleged defects in the pipes. *Hoffman* v. *Dickinson,* 31 W. Va. 142, point 11. These terrible accidents will happen in such operations as that in this case. Negligence must be established. The master does not guarantee the safety of the servants. His duty is reasonable care, having relation to the parties, the business on hand and in view of the situation of the parties under the circumstances. *Oliver* v. *Ohio River Co.,* 42 W. Va. 703; *Fulton* v. *Crosby Co.,* 57 W. Va. 91. Remember that this was not an operating mill, but still in process of construction, especially so as to this piping. Whorley was engaged in constructive work.

Instruction No. 3 is bad for reasons above stated. "The court instructs the jury that it is the direct personal and absolute obligation of the master to provide a reasonably safe and suitable machinery and appliance for the business. This includes the exercise of reasonable care in furnishing such appliances. The master must furnish a reasonably safe place in which his servant is to work. And the jury are further instructed that a master is liable for any injury due to the neglect or failure of the master to provide such reasonably safe and suitable machinery and appliances for the business, or to exercise such reasonable care in furnishing such appliances or to furnish his servants a reasonably safe place in which to work." This instruction seems to introduce the rule of reasonable care in furnishing appliances. Instruction No. 1 does not do so. If instruction 3 is to be construed as stating that all that is required of the master is that he use care in furnishing appliances, it is inconsistent with No. 1, which declares that the master must provide reasonably safe appliances and machinery and safe place to work in. Which instruction would the jury follow? But does instruction 3 say that all that is required is that the master use care in furnishing good appliances? It opens by saying that it is the "direct personal and absolute obligation of the master to provide a reasonably safe and suitable machinery and appliances." It then says that this includes reasonable care in furnishing such appliances. Which standard of duty are we to take as spoken by this instruction? It is unclear and uncertain, and liable to mislead the jury in addition to reasons given above rendering it bad. It does not properly and clearly state the duty of the master.

We do not think instruction 4 is bad.

On consideration of the evidence of the plaintiff alone we have come to the conclusion that it does not sustain the action, because it does not clearly show and identify the cause of the injury to the plaintiff. This is an action based on negligence, which the plaintiff must prove. He must show the cause of the injury and also the defendant's negligence responsible for it. The plaintiff's evidence is aimed to show that there were no traps or drain holes in the steam pipes, and that from condensation of steam there was a water deposit in the pipe, and that

when the steam would be turned on it would break the pipe because of the presence of this water producing what is called "water hammer" which broke the pipe. It is not shown that the want of drain holes caused the pipe to burst by producing water hammer which would break the pipe. It is claimed that water in the pipe when steam is turned on will produce water hammer which may break the steel pipe. It is not established that water hammer will break the pipe. Water hammer makes a loud noise. Nobody heard it. No evidence at all proves it. The evidence is indefinite to show that the want of drain holes caused the accident. It may have come from latent defect in the pipe, a theory more plausible than that a little water in the pipe would burst it. The law requires definite evidence fixing the cause of disaster. "The doctrine stated in the last section involves the corollary, that a servant cannot recover where it is merely a matter of conjecture, surmise, speculation, or supposition, whether the injury was or was not due to the negligence of the master or of an employe for whose acts and omissions he is responsible." Labatt, Master & Servant, § 837. In *Patton* v. *Texas R. R. Co.,* 179 U. S., the Supreme Court said: "It is not sufficient for the employe to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of a half dozen things may have brought about the injury for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between these half dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion." For this plain proposition abundant law will be found in *Green* v. *R. R. Co.,* 5 A & E. Ann. Cases 165, and note. The evidence of three of the plaintiff's witnesses tends to show that the want of these drain holes was the source of the accident; but one of them, perhaps two, say they could not say with any certainty what caused the accident. They seem to surmise that such was the cause, give that as their opinion. Their evidence to that effect is given with hesitancy. They do not assert it with any confidence but manifest uncertainty of opinion. On the other hand, nine witnesses

for the defense, experienced mill wrights and mechanics who had erected mills of this type, who declared that drain holes or steam traps were for the purpose of draining the pipe to prevent freezing or to protect the engine or cylinder, and not to secure safety or to prevent bursting of the pipes. Two other witnesses declared that drain holes were not necessary for safety. The witnesses for the plaintiff had only worked about mills, some, but were not machinists, mechanical engineers or mill wrights. The plaintiff did not sustain his case.

Again, if the pipe burst from want of drain holes, who is responsible? Who should have put them in? The mill wright. His negligence, if any, is negligence of a fellow servant. But the case does not establish any negligence.

We think that the plaintiff's instruction 7 directing the jury to find for the defendant should have been given. Under these principles we are led to reverse the judgment, set aside the verdict, grant a new trial and remand the cause.

*Reversed and Remanded.*