# CHARLESTON.

### JAEGER v. CITY RAILWAY COMPANY.

Submitted June 10, 1912.    Decided April 15, 1913.

1. MASTER AND SERVANT—*Street Railroad Employe—Assumption of Risk—Obvious Danger.*

   Defective construction of a curve in a railway track, discernable only by measurement, calculations and the application of scientific rules and principles, is not an obvious danger of which the employee of the railroad company is deemed to have knowledge.  (p. 309).

2. PLEADING—*Declaration—Sufficiency—Theory of Action.*

It is not necessary, in the statement of a cause of action in a count of a declaration for negligence, to assert a single hypothesis of wrongful action or omitted duty and then exclude every other. It suffices to set forth the act or instrumentality of injury and attribute the injury to the wrongful act, declaring it to have been negligent. This gives the defendant reasonable notice of the ground of liability charged and complies with the rule requiring certainty to a common intent only. (p. 309).

3. SAME—*Declaration—Defect in Form—Demurrer—Motion.*

The assertion in a declaration, by a servant against his master for injury by negligence, of a higher degree of duty on the part of the latter than the law imposes, as to provide the servant a safe place to work, instead of a reasonably safe place, is a defect in form rather than substance, remediable by application to the court for a more specific statement of the ground of the action, and does not render the count bad on demurrer. (p. 310).

4. TRIAL—*Instruction—Necessity of Request.*

Failure of both parties in an action for personal injury, to ask for instructions as to the degree of care due from the master to the servant, or the measure of the former's duty, is deemed a waiver of the right to an instruction upon that question, and, in such case, it is not error for the court to give binding instructions hypothetically submitting to the jury the acts of negligence complained of, without defining the measure of duty on the part of the master. (p. 311).

5. SAME—*Refusal of Instructions.*

The trial court may properly refuse instructions drawn in terms so inartificial, inapt and general as to make them misleading. (p. 313).

6. MASTER AND SERVANT—*Duty of Master—Reasonable Care.*

The measure of the duty of a master to his servant is reasonable care. in view of the situation of the parties, the relations they have established, the nature of the business in which the servant is employed, the character of the machinery and appliances used, the surrounding circumstances and conditions and the exigencies which require vigilance and attention. (p. 315).

Error to Circuit Court, Ohio County.

Action by Henry Jaeger against the City Railway Company, a corporation. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*John J. Coniff* and *Charles J. Schuck*, for plaintiff in error.

*John A. Howard* and *O'Brien & O'Brien*, for defendant in error.

POFFENBARGER, PRESIDENT:

The declaration in this action for damages for a personal injury to a street car conductor, occasioned by derailment of the car on which he was working, contains seven counts, the sufficiency of each of which is challenged by demurrer. The trial court sustained the demurrer as to the third count and overruled it as to all the others. On this writ of error, the defendant complains of the rulings on the demurrer adverse to it and the overruling of its objection to certain instructions and its motion to set aside the verdict.

Improper construction of the curve at which the derailment took place, set forth with considerable detail and specification, and operation of the cars thereon, constitute the gravamen of the first and second counts. In connection with this allegation of an unsafe place of work for the plaintiff, the operation of the car over the track so improperly constructed is admitted. On this admission is founded an argument or contention of assumption of risk on the part of the plaintiff, constituting a defense apparent on the face of the counts themselves. A defect in construction of that sort, discoverable only by measurements and the application of scientific rules and principles, is not an obvious one of which an employee must take notice. No palpably improper construction is admitted. These counts say only that the defendant carelessly and negligently constructed the said curve, carelessly and negligently used in the said construction improper and unsafe rails, improper and unsafe guard rails, and carelessly and negligently constructed an irregular, untrue, improper and unsafe curve. All this may be true and the defect or danger be not open and notorious, so as to attract the attention of the conductor passing over the road in the course of his employment.

Defective equipment of the car in respect to brakes and sand appliances is the ground of negligence asserted in the fourth, sixth and seventh counts, and failure in respect to the duty of inspection of the track is the charge of the fifth. As the fourth merely alleges defectiveness of the brake, without showing the ab-

sence or insufficiency of other safety devices for the purposes for which brakes are used, and the sixth and seventh charge unsuitableness and inadequacy of the same appliances, without an averment of the necessity for such appliances by negation of the use of other appliances for the accomplishment of the purpose for which sand is used, it is insisted that these counts, considered separately and singly, do not make out causes of action. In each instance, these counts say the injury resulted from the defect specified. Each sets out a cause of action. The allegation gave the defendant notice, with reasonable certainty, of the acts of negligence charged against it and thus effects the object of pleading. Certainty to a common intent is all the rules require. It is not necessary, in setting forth causes of action, to assert a single hypothesis of wrongful action or omitted duty and then exclude every other, as a jury is required to do in reaching a verdict in a criminal case involving circumstantial evidence. The objection to the fifth count is similar. Denying duty on the part of a railroad operator to have regular and daily inspections of its track made, under any and all circumstances, counsel say no cause of action is alleged in this count. It says the track at the point of the accident descends a long steep grade to a sharp curve on the edge of a dangerous embankment, and charges duty on the part of the defendant to avoid injury to the plaintiff by reason of defective construction or defective and unrepaired condition of the track on said grade, and to employ proper and suitable track inspectors and to inspect carefully and regularly the track on the grade and at the curve, and then avers non-performance of this duty and consequent injury. There is no suggestion of duty to inspect regularly every foot or inch of the track of a long railroad. On the contrary, there is an averment of duty to take precautions for safety at a particularly dangerous point on the track. The rules, principles and reasoning found in the opinion in *Hains* v. *Railway Co.*, recently decided and not yet reported, *Bralley* v. *Railroad Co.*, 66 W. Va. 462, and *Veith* v. *Salt Co.*, 51 W. Va. 96, fully sustain the action of the court below in holding these criticisms and objections untenable and insufficient.

Most of the counts aver duty on the part of the defendant to maintain a safe place for work by the plaintiff and safe instrumentalities and appliances with which to work, not mere duty to exercise reasonable care to provide a reasonably safe place to

work and reasonably safe appliances with which to work, the measure of duty prescribed by law, as shown in *Worley* v. *Lumber Co.*, 70 W. Va. 122, and the many cases there cited. The inaccuracy of statement in the declaration is relied upon as ground of insufficiency. All of the counts here considered set forth causes of action. In a substantial sense each of them is good. Each apprises the defendant of an alleged ground of liability. Each may claim a higher duty on the part of the defendant to the plaintiff than the law imposes, by the use of general terms, but this is a defect of form rather than substance, and under our practice as modified by statute, such defects are remediable not by general demurrer, but by application to the court for more specific statements of the grounds of action. *Gartin* v. *Coal Co.*, recently decided and not yet reported; *Jacobs* v. *Williams*, 67 W. Va. 377.

Failure to define, in the instructions given for the plaintiff, the measure of the defendant's duty in accordance with the conclusions stated in *Worley* v. *Lumber Co.*, is a ground of complaint. There is a like omission in the instructions given at the instance of the defendant and those asked for by the defendant and refused. The failure of the attorneys for each of the parties to ask any instruction on this subject seems to have been either the result of oversight or conviction on their part that the measure of duty was so well understood by the jury that there was no occasion for instructions on that subject. This omission may render some of the instructions incomplete, but the defect is rather a formal one and seems to have been waived.

As the plaintiff did not testify and there is no evidence as to what particular vocations or callings he had capacity for before the accident, exception is taken to that part of instruction No. 2, given for the plaintiff, which authorizes the jury, in estimating damages, to ascertain how far the injury is calculated to disable him from engaging in those pursuits and occupations, for which, in the absence of such injury, he would have been qualified. This objection is untenable. In the absence of evidence as to his capacity and fitness for particular vocations, the jury could base an estimate upon their common knowledge of the capacity of an ordinary man to follow a great many pursuits.

The car on which the plaintiff was working at the time of his injury had formerly been equipped with four sand boxes, two on

each end, enabling the motorman to sand both rails of the track at the same time; but about two years before the accident, two of these, one on each end, were removed, leaving means of sanding only one rail at a time, and one issue in the case was whether the defendant had committed an act of negligence in this alteration of the car. Plaintiff's instruction No. 3 embodied this act as one of its elements, and authorized the jury to find negligence on the part of the defendant, if they believed the car had formerly been equipped with proper and adequate appliances for sanding both rails, and the defendant company had removed from it a part of the said sanding appliances, and the removal of that part rendered the remaining sanding appliances inadequate, and the defendant had failed or neglected to restore or replace the parts removed. Plaintiff's instruction No. 4. embodied the same theory of negligence in similar terms. Alleged imposition of too high a degree of duty upon the defendant is the basis of the attack upon both of them, because each fails to submit to the jury whether, notwithstanding the act complained of, the defendant had exercised reasonable care and prudence for the safety of the plaintiff. The degree of care and measure of the defendant's duty constituted a separate and distinct element in the case and could have been submitted to the jury in independent instructions properly formulated for the purpose and full opportunity was afforded the defendant to obtain them. These instructions had for their purpose a finding by the jury as to whether the appliances were defective and correctly submitted that issue. Hence they are correct and unobjectionable to the extent of their subject matter. An instruction need not cover all phases of the case. If it correctly states the law applicable to its subject matter and is defective only in the sense of incompleteness, it may properly be given. *State* v. *Kellison,* 56 W. Va. 690; *State* v. *Prater,* 52 W. Va. 132. Both instructions were binding, it is true, but they propounded a question of liability on the theory of inadequate appliances. Their purpose was to submit to the jury whether the appliances were defective. That was one issue in the case. Whether the defendant had exercised reasonable care for the safety of the plaintiff was a separate and distinct issue, although closely related in its nature to the other. On this, both of the parties were content to let the case go to the jury without instruction. Presumptively, therefore, they were satisfied that from the oral argument and

otherwise the jury were sufficiently informed as to the degree of care required.

Another ground of complaint is the refusal of the court to give defendant's instruction No. 6, dealing with the removal of the sand boxes. Its general purpose was to submit to the jury the propriety, under all the circumstances, of the removal of the boxes, but the terms in which this portion of it is expressed are inartificial, inapt and misleading. It would have directed the jury to inquire whether it was "the proper thing" to remove the double sand boxes on the summer cars and whether these changes were made according to the judgment, and under the instructions, of the defendant's superintendent. Had this instruction been given, it would have submitted no inquiry as to whether the car was rendered defective or unsuitable for use after the removal of the double said boxes. It would have required a finding as to whether the removal of the double sand boxes was "the proper thing"; a very indefinite inquiry. We do not think the court erred in refusing this instruction.

The derailment and injury complained of occurred on a very steep grade, ranging from 4.65 feet in a distance of 100 feet to 11.74 feet, and at a sharp curve at which the grade was nearly 7 feet in the 100. The average grade was 8.76 feet in every 100 feet. The road ran from the city of Wheeling up a steep hill to a place of amusement, called Mozart Park. Between the sharp curve, at which the derailment took place, and the park there is at least one other curve on a heavy grade. Over this road in the summer, there is very considerable traffic. On certain occasions, as many as 29 trips a day were made over it by the single truck open summer cars. When these cars were first put on, they had two sand boxes on each end, operated by the motorman, so as to sand both rails at the same time. They remained in this condition from 1903 or 1904 until 1907, when the boxes were changed. Two of them were removed and placed on the winter cars, leaving one box on each end of the summer cars. This rendered it impossible for the motorman to sand more than one rail at a time. Before the occurrence of the accident here involved there had been two similar accidents at the same place, one by car No. 35 while equipped with four sand boxes, and another by a similar car carrying only one sand box on each end. All the cars were equipped with hand brakes and magnetic brakes and also with an appliance

for reversing the current as a means of checking the speed or stopping them. There is some conflict in the evidence as to whether the accident to the car in 1904, carrying the four sand boxes, was due to incompetency of the motorman. As to the cause of the later accident to the car equipped with only two sand boxes, the testimony is indefinite. The sand tubes were so far in advance of the wheels and trucks that no sand fell on the track while passing over a sharp curve. Whether it was practicable, in view of the brakes and other appliances in front of the wheels, to bring these tubes closer to them, is left in considerable doubt by the evidence. No defect in the construction of the track in the curve or elsewhere is shown, nor is there proof of lack of sufficient inspection of the track or car. The car on which the plaintiff was injured had been inspected and repaired just before it started on the trip on which he was hurt. One accident occurred while the cars were equipped with four sand boxes and another occurred when they were equipped with only two sand boxes. On the occasion of the accident involved here, the tracks were wet and slimy, on account of a heavy fog such as the witnesses say often occurred at that place. The motorman lost control of the car while passing through a curve on a steep grade some hundred feet above the curve at which the derailment occurred. In this upper curve, the sand boxes dropped no sand on the rails, because the tubes came down too far in advance of the wheels. Both the motorman and other witnesses testify that he used the magnetic brake and reversed the current in his efforts to check the speed of the car and get it under control. The magnetic and hand brakes could not be used at the same time. They were not intended to be. No defect in either brake is proven. Some of the witnesses, experienced motormen, but employees of the defendant company, deny that an additional sand box on the front end of the car, would have given any better protection than the single sand box; but a civil engineer who had formerly been superintendent of the road and had supervised its construction and equipment and the present superintendent were both of the opinion that two sanded rails would have afforded greater protection than one. The former witness expressed the opinion that the cars should have had double sand boxes on them, but he did this with considerable hesitancy and reluctance, saying he hardly knew how to answer the question, because cars had been operated over the

track, both summer and winter cars, with one sand box.    Plaintiff
had worked for the defendant and run over this steep grade. as
conductor for a considerable period of time, apparently more than
a year.    On the morning of the accident he had made two round
trips to the park.    In this state of the evidence, we are called upon
to say whether there is sufficient evidence of negligence to sustain
the verdict, and this involves a further inquiry as to whether the
employment was obviously hazardous and the plaintiff assumed
the risk of injury.

In the relation between master and servant, the principle of
waiver has wide scope and operation.    In the abstract, the mas-
ter is under absolute duty to furnish the servant a reasonably
safe place in which to work and reasonably safe appliances with
which to work, but the servant, having knowledge of the failure
in these respects, is deemed to have waived performance or rather
to have assented to the conditions the master has made.    The
principle is stated in *Fulton* v. *Crosby-Beckley Co.,* 57 W. Va. 91,
94, as follows: "As the employe assumes the risk of all known
dangers, though attributable to failure of legal duty in the ab-
stract on the part of the employer, the question of negligence in
any given case depends upon the relation which the master and
servant, by their conduct and agreement, have established be-
tween themselves with reference to the business in which the ser-
vant is employed.    This waiver on the part of the servant releases
the master from much of the burden which the law, but for it,
would impose."    This conclusion resulted from an examination
of many cases.    Its application here necessarily results in re-
versal of the judgment and the granting of a new trial.    The
conditions under which the plaintiff was working at the time of
the accident were those under which he had been working for sev-
eral months at least.    He knew the character of the road, its sub-
jection to foggy and murky weather, rendering the track slippery,
and the liability of cars on such a road under such conditions to
get beyond control, even when operated by the most competent
motorman.    This danger was not so great as might be supposed,
for, during the whole period of two years in which cars equipped
as the one on which he was working had been used on the road,
but a single accident had occurred.    Within that time from 19 to
29 trips a day had been made over the road, during the summer
season, amounting in the aggregate to thousands, and the cause

of the single accident within that period is not shown to have been lack of additional sanding appliances. , On the morning of the accident, under the very same conditions obtaining at the time of its occurrence, he had already made two trips up and down that grade and without accident. On many former occasions he had conducted cars of the company over the road under similar conditions without mishap. He may not have fully realized the danger of working on that road, but the evidence establishes no negligence, no want of reasonable care, on the part of the defendant. No evidence proved, or tended to prove, any connection with the former accident and the lack of additional sanding appliances. Without them, the defendant operated cars under all conditions of weather for a period of two years without any accident shown to have been the sequence of lack of sand boxes. Nothing in this long experience indicated necessity for more of them. On the contrary, the defendant's own experience tended to prove lack of necessity therefor. The plaintiff's injury appears to have been very great and his condition to be distressing, but the rules of law cannot be varied or ignored as a means of relief from his misfortune.

As the evidence is wholly insufficient to sustain the verdict, the judgment must be reversed, a new trial granted and the case remanded.

*Reversed and Remanded.*