WEST VIRGINIA DEPARTMENT OF HIGHWAYS, *et al.*

*v.*

HOWARD G. BUCKLEY

(No. 14530)

Decided December 11, 1979.

*William L. Jacobs* for plaintiffs-in-error.

*Ronning, Brown & Full, Joseph M. Brown* for defendant-in-error.

PER CURIAM:

In 1963, the appellant, Howard G. Buckley, was the owner of an island located in the Ohio River near Marietta, Ohio. The West Virginia Department of Highways, acting under the power of eminent domain, condemned a portion of the island as a right of way for a pier for a bridge to carry Interstate 77 across the river. The question of just compensation for the land taken and damages to the residue was ultimately decided on September 2, 1976 by a Wood County Circuit Court jury. They re-

turned a verdict finding $2,000.00 was just compensation to Mr. Buckley. A motion to set aside the verdict was made and by order of February 3, 1978, denied. This appeal raises a number of issues relating to the correctness of the trial court's rulings. We conclude the trial court acted correctly in regard to all matters complained of.

Buckley's Island is underlain by sand and gravel. Appellant contends the court foreclosed his offers of evidence of the existence and quantity of sand and gravel underlying the island. Appellant also contends the court prevented the offer of evidence of damages to the residue occasioned by the inability of the appellant to remove sand and gravel from within 500 feet of the bridge pier; removal within this area being prohibited by a United States Army Corps of Engineers' regulation.

After carefully examining the record we conclude these claims are without merit. Appellant had an opportunity to present evidence as to the existence and quantity of the sand and gravel. In fact, Mr. Buckley himself testified on these points. An appraiser testifying as the appellant's expert witness was permitted to testify he had considered the existence of the sand and gravel in the condemned area and also had considered the loss of the right to remove sand and gravel from the residue covered by the 500 foot prohibition. The record demonstrates that his opinion as to damages was based on these matters.[1]

---

[1] "Q. [By appellant's counsel of Mr. Matheny, appellant's appraiser] Were you made aware or did you make yourself aware, sir, of the sand and gravel deposit on Buckley Island on or about December, 1963, incident to your appraisal?

A. Yes, sir.

Q. Do you have an opinion, sir, as to the fair market value of the 1.45 acre tract of land involved in the take ...?

A. I do.

Q. What was its fair market value as of that time, [time of the take] sir?

A. In my opinion, it was $20,300.00.

. . .

Appellant contends the trial court acted incorrectly when it refused to give certain instructions. Initially, we note that appellant's Instructions 1 and 3A were given.[2]

Appellant contends the trial court erred in refusing to give his Instruction No. 2 which would have told the jury that in ascertaining the market value the landowner is entitled to consideration of all the advantages which the land possesses. This concept was embodied in

---

Q. And, sir, was there any damage to the residue of the island by this take ...?

A. Yes, there was.

Q. [The appraiser's testimony on the damage to the residue was, in part] ... what did you consider as elements of that damage?

A. The 500 foot strip around the piers, which would make a 1,000 foot swath which would be inoperable as far as digging gravel."

.  .  .

"Q. In connection with your appraisal of this take and the damage of the residue, were you informed and advised that there was a limitation imposed for 500 feet on each side of the bridge pier from the standpoint of removal of sand and gravel?

A. Yes, sir."

.  .  .

"Q. Tell us, then, sir, if you will, Mr. Matheny, what then was the total fair market value of the property taken and the damage to the residue of Mr. Buckley's property?

A. For the take, I have $20,300.00; and for the damage to the residue, which is the 1,000 foot swath, I have $117,235, making a total, taken damages, of $137,535.00."

[2] Defendant's Instruction No. 1:

"In determining fair market value you should consider every element of value which ordinarily arises in negotiations between private persons with respect to the voluntary sale and purchase of property. You should consider the use being made of the land, at the time of its taking, its suitability for other uses, its adaptability for every useful purpose to which it may reasonably be expected to be immediately devoted, and the most advantageous uses to which it may be so applied."

Defendant's Instruction No. 3A:

"In determining the compensation to be awarded the landowner in eminent domain proceedings, the existence if any, of mineral deposits which are shown by a preponderance of the evidence to be in the land taken constitutes an element which may be considered insofar as it influences the fair market value of the land."

Instruction No. 1 given by the court, and, therefore, it was not error for the court to refuse Instruction No. 2.

> "It is not error to refuse to give an instruction to the jury, though it states a correct and applicable principle of law, if the principle stated in the instruction refused is adequately covered by another instruction or other instructions given." Syl. pt. 3, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966).

Appellant also contends it was error for the court to refuse to give his Instruction No. 3, which would have told the jury that the presence, quantity and value of sand and gravel may be taken into consideration in ascertaining the value of land in condemnation proceedings. The concept of this instruction was adequately covered by appellant's given Instructions Nos. 1 and 3A, and accordingly it was not error to refuse it. *Morgan, supra.*

Appellant contends the trial court should have given his Instruction No. 11 which would have told the jury that in assessing the compensation to award the landowner they could consider the damage to the residue by reason of the loss of his right to remove sand and gravel from that residue:

> "For the purpose of determining market value in a condemnation proceeding to take land in fee which forms a part of a larger tract, consideration should be given to every element of value which ordinarily arises in negotiations between private persons with respect to the voluntary sale and purchase of land, the use made of the land at the time a part of it is taken, its suitability for other uses, its adaptability for every useful purpose to which it may be reasonably expected to be immediately devoted, and the most advantageous uses to which it may be so applied." *Strouds Creek and Muddlety Railroad Co. v. H. Lee Herold, et al.*, 131 W.Va. 45, 45 S.E.2d 513 (1947).

*Strouds Creek* goes on to say that value based on future or prospective uses which are predicated on speculation or conjecture is not to be considered. Instruction No. 11 ignores the *Strouds Creek* immediacy requirement. Accordingly, it is an incorrect statement of the law, and was properly refused for that reason. "An instruction which does not correctly state the law is erroneous and should be refused." Syl. pt. 2, *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971).

The appellant contends the trial court erred when it refused to give Instruction No. 4 which would have told the jury that the value of the property for any purpose for which it is available may be considered in determining the fair market value. This instruction was properly refused because it does not embody the *Strouds Creek* immediacy requirement, and does not rule out the consideration of purposes or uses based on speculation or conjecture. Accordingly, it incorrectly states the law. Instructions which are incorrect statements of law should be refused. *Collins, supra.*

Appellant contends the court erred when it refused to give Instruction No. 6. This would have told the jury that in determining the value of land taken they could ascertain the value on the basis of the most advantageous use or uses to which the land may reasonably be applied. This instruction, like the two foregoing instructions, does not limit the inquiry into value to those uses to which the land may be reasonably expected to be immediately applied; accordingly it mistates the law as embodied in *Strouds Creek* and was properly refused for that reason. *Collins, supra.*

The final point considered is the contention the jury verdict was so grossly inadequate as to warrant this Court's overturning it. Interwoven with this claim is the contention the jury verdict was inadequate because the state's appraisers failed to consider the existence of sand and gravel. The record discloses a wide difference in the damages found by the state's and the appellant's appraisers.

The state's appraisers proceeded on the theory the highest and best use of the land was for agricultural purposes. It was their opinion the sand and gravel deposits were not suitable for commercial development. Accordingly, sand and gravel, its existence, quantity, and the loss of the right to remove it was not a factor in their appraisals.

Appellant's experts differed on the marketability of the deposits, and found the highest and best use of the land was for sand and gravel mining. At trial the appellant made no challenge to the testimony of the State's appraisers on the ground their opinions were without a proper foundation; no motion to strike their testimony was made. Accordingly, the case went to the jury on the conflicting expert opinion:

> "A jury verdict based on conflicting testimony, involving credibility of witnesses and reasonable inferences to be drawn from testimony and approved by the trial court, will not be set aside by this Court on the ground that it is contrary to the evidence unless in that respect it is clearly wrong." Syl. pt. 9, *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897 (1966).

The appellant assigns a number of other errors. However, an examination of the brief reveals these assignments are not properly discussed or argued. Under these circumstances these assignments are waived and will not be considered by the Court. Syl. pt. 3, *Higginbotham, et al. v. The City of Charleston, etc., et al.,* ___ W.Va. ___, 204 S.E.2d 1 (1974). Rules of Practice in the Supreme Court of Appeals, Rule VI, § 2.

Based upon the foregoing we conclude there is no error requiring the reversal of the judgment below and accordingly we affirm the final judgment.

*Affirmed.*