312 S.E.2d 738

**Phillip McALLISTER, etc., et al.**

v.

**WEIRTON HOSPITAL CO., et al.**

**No. 15703.**

Supreme Court of Appeals of
West Virginia.

Nov. 10, 1983.

Rehearing Denied Dec. 15, 1983.

Bogarad & Robertson and David N. Dittmar and William R. Kiefer, Weirton, for appellants.

DeLaMater, Hagg & Bohach and W. Dean DeLaMater, Weirton, for Weirton Hosp.

O'Brien, Cassidy & Gallagher and Timothy F. Cogan, Wheeling, for Leonard E. Yurko, M.D.

McGRAW, Chief Justice:

This appeal from the Circuit Court of Hancock County is brought by Phillip McAllister and his mother and next friend, Helen McAllister, the plaintiffs below, after a jury verdict in favor of the defendants, the Weirton Hospital Company and Dr. Leonard E. Yurko. The appellants allege that the trial court erred in giving certain erroneous instructions; in failing to give one of their own proposed instructions; and in not directing a verdict as to the issue of the defendants' negligence.

On July 3, 1976, at approximately 9:45 p.m., Phillip McAllister, then fifteen years old, was cleaning his uncle's 44 magnum revolver when it accidently discharged sending a bullet through his lower right leg, severing two of the three main arteries which supply blood to the lower right leg and foot. An ambulance was summoned, and he was taken to the emergency room of the Weirton General Hospital, arriving at approximately 10:35 p.m.

Dr. Louis Torres, the emergency room physician on duty, administered emergency treatment consisting of a tetanus shot, x-rays, wrapping the leg with a tensor bandage, and packing the leg in ice. At approximately 11:40 p.m., Phillip was discharged from the emergency room, was admitted to the hospital, and was taken to a semiprivate room. Because the x-rays of McAllister's leg revealed a broken bone, Dr. Torres had him admitted as a patient of Dr. Leonard E. Yurko, a local orthopedist.

When Dr. Torres telephoned Dr. Yurko to inform him of the admission of McAllister as Yurko's patient, Dr. Torres testified that he advised Dr. Yurko that Phillip had a gunshot wound with a compound fracture of the leg. Dr. Yurko, on the other hand, testified that Dr. Torres reported only a simple fracture, and did not report any gunshot wound. Therefore, Dr. Yurko issued orders commensurate with the treatment of a simple leg fracture, and directed Dr. Torres to schedule McAllister for surgery at 10:00 a.m. the following morning. Dr. Torres did not question Dr. Yurko's directions, and scheduled surgery for 10:00 a.m.

At approximately 12:30 a.m., spurred on by Phillip's complaints of pain and by his family's requests that a doctor check on his condition, a nurse telephoned Dr. Yurko concerning Phillip's condition. Dr. Yurko replied that he did not have a gunshot wound patient, and that McAllister was probably a patient of his nephew, Dr. Anthony Yurko, a local surgeon. After this communication, there is conflicting testimony concerning another conversation which subsequently took place between the hospital and Dr. Yurko. A nurse at the hospital testified that upon confirming that McAllister was indeed Dr. Yurko's patient, she again called him at approximately 1:00 a.m. She testified that Dr. Yurko did not deny that McAllister was his patient, but said that he would examine him at 10:00 a.m. the next morning. Dr. Yurko, on the other hand, testified that he did not remember receiving this second call. Despite this

conflicting testimony concerning the hospital's 1:00 a.m. call, however, it is uncontroverted that at approximately 1:45 a.m. another call was made to Dr. Yurko which resulted in Yurko's ordering McAllister transferred to Pittsburgh Presbyterian Hospital where medical personnel qualified to perform the surgery required were located. Dr. Torres contacted Presbyterian, but it refused to admit McAllister. Dr. Torres then contacted Children's Hospital in Pittsburgh, which accepted Phillip as a patient.

At 2:35 a.m. Phillip left Weirton General Hospital. He arrived at Children's Hospital at about 3:30 a.m. At approximately 4:30 a.m. he was taken to the operating room, and surgery began on his leg at around 5:30 a.m. The surgeons performing the operation at Children's Hospital decided not to attempt a revascularization procedure on the two severed arteries in Phillip's leg which could have restored full circulation and minimized the chances that ultimate amputation would be necessary.[1] Three weeks later, as the result of dry gangrene caused by the lack of circulation in Phillip's leg, a below-the-knee amputation was performed.

On June 28, 1978, the plaintiffs instituted this action against the Weirton General Hospital. On August 19, 1980, they amended their complaint to include Dr. Leonard E. Yurko as a defendant. The plaintiff's claims of negligence were based upon the delay in transferring Phillip to a facility where qualified personnel could perform the surgery required and upon what they interpret as improper treatment of Phillip's injuries. The defendants' position was that despite some initial confusion and delay, Phillip's leg was lost due to the severe arterial damage caused by the gunshot, and was not proximately caused by any delay or improper treatment. After considering the testimony presented, including expert testimony presented on behalf of both plaintiffs and defendants, the jury returned a verdict for the defendants.

The appellants allege that the trial court erred in giving three of defendant Yurko's instructions. First, the appellants contend that the giving of Yurko's Instruction # 3 [2] precluded them from securing an instruction based upon the theory of aggravation of an existing injury. The primary difficulty with this contention, however, is that appellants failed to offer any instruction embodying aggravation of an existing injury language. In Syllabus Point 5 of *Henry C. Werner Company v. Calhoun*, 55 W.Va. 246, 46 S.E. 1024 (1904), this Court stated, "A verdict will not be disturbed for want of a proper instruction, unless it was requested and refused ...." *See also Stephenson v. Atlantic Terra Cotta Co.*, 230 F. 14 (4th Cir.1915); *Jaeger v. City Railway Co.*, 72 W.Va. 307, 78 S.E. 59 (1913). Rule 51 of the West Virginia Rules of Civil Procedure provides, "Either before or at the close of evidence, any party may file written requests that the court instruct the jury on the law as set forth in the requests ...." It is not incumbent upon trial judges to exercise clairvoyance in determining what instructions are desired, particularly when tangential issues or theories of recovery are involved.

---

1. It is apparent from the record that the appellants did not bring an action against either Children's Hospital or the physicians involved in Phillip's surgery. Additionally, it does not appear that an action was brought against Pittsburgh Presbyterian for its refusal to admit Phillip. Therefore, despite the appellants' failure to recover in the instant action, recovery might still be had under a contract theory in Pennsylvania.

2. The Court instructs the jury that plaintiffs' burden of proof applies to their claim of damages as well as to their claim on the issue of whether or not treatment was delayed or was improper by the hospital and/or defendant Yurko, and it is plaintiffs' obligation to prove by preponderance of the evidence that the loss of Phillip McAllister's leg was sustained as a direct and proximate result of the delay in treatment or improper treatment of Phillip McAllister until he entered the Children's Hospital in Pittsburgh, Pennsylvania, in the early morning hours of July 4, 1976, and if you believe that it was equally possible for Phillip McAllister to have lost his leg as a natural result from the gunshot wound, then you may not assess any damages against either of the defendants, and should return a verdict in favor of defendants.

■ In addition to appellants' failure to offer an aggravation instruction, it is not readily apparent how the giving of Yurko's Instruction # 3, dealing with the plaintiffs' burden of proof, precluded the appellants from securing an instruction on aggravation of an existing injury. Furthermore, even if such an instruction had been tendered, it is difficult to understand how this purported alternative theory of recovery was any different from that for which instructions were given. An allegation of medical malpractice almost always necessarily involves aggravation of a preexisting injury or illness. The mere formulation of an alternative label for the same theory of recovery does not entitle the formulating party to an instruction embodying this alternative label.

■ In Syllabus Point 2 of *Jennings v. Smith*, 165 W.Va. 791, 272 S.E.2d 229 (1980), *quoting*, syl. pt. 3, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966), this Court stated, "It is not error to refuse to give an instruction to the jury, though it states a correct and applicable principle of law, if the principle stated in the instruction refused is adequately covered by another instruction or other instructions given." *See also West Virginia Dept. of Highways v. Buckley*, 164 W.Va. 77, 260 S.E.2d 826 (1979); *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975); *Willey v. Travelers Indem. Co.*, 156 W.Va. 398, 193 S.E.2d 555 (1972); *Sydenstricker v. Vannoy*, 151 W.Va. 177, 150 S.E.2d 905 (1966); *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963); *Keffer v. Logan Coca-Cola Bottling Works, Inc.*, 141 W.Va. 839, 93 S.E.2d 225 (1956). Even if an instruction concerning aggravation of a preexisting injury had been offered, the issue was already adequately covered in instructions dealing with allegations of inappropriate and delayed treatment.

■ The second instruction the appellants assign as error is Yurko's Instruction # 4. It stated,

The jury must first decide whether the defendants or one of them, are liable to the plaintiff before considering the question of the plaintiff's injuries .... If you decide the issue of liability in favor of the defendants, you must then return your verdict in their favor; in that event, you would have no occasion to consider the issue of damages.

The appellants object to the use of the term "liability" rather than the term "negligence" in this context. Initially, however, it is interesting to note that the term "liability" was used in an almost identical context in appellants' Instruction # 28, which was given by the court below. It stated, "The Court instructs the jury that if your verdict is for the plaintiffs *on the issue of liability*, in assessing damages, you shall include damages which resulted from subsequent unskillful medical treatment ...." (emphasis added). Other instructions given the jury helped define such terms as "negligence," "proximate cause," and "liability." As evidenced by appellants' Instruction # 28, the use of the term "liability" was consistent throughout the charge to the jury, and meant negligence which proximately caused McAllister's injuries. In Syllabus Point 3 of *Lambert v. Great Atlantic & Pacific Tea Company*, 155 W.Va. 397, 184 S.E.2d 118 (1971), this Court stated,

Instructions must be read as a whole, and if, when so read, it is apparent they could not have misled the jury, the verdict will not be disturbed, though one of said instructions which is not a binding instruction may have been susceptible of a doubtful construction while standing alone.

*See also Donta v. Harper*, 168 W.Va. 237, 283 S.E.2d 921 (1981); *Kingdon v. Stanley*, 158 W.Va. 835, 215 S.E.2d 462 (1975); *Lancaster v. Potomac Edison Co.*, 156 W.Va. 218, 192 S.E.2d 234 (1972); *Wittaker v. Pauley*, 154 W.Va. 1, 173 S.E.2d 76 (1970); *Ellison v. Wood & Bush Co.*, 153 W.Va. 506, 170 S.E.2d 321 (1969); *State Road Comm'n v. Bowling*, 152 W.Va. 688, 166 S.E.2d 119 (1969). Obviously, legal terms need not be redefined at each point used in an instruction. When viewed as a part of an integrated instruction, the use of the term "liability" in the context of Yurko's

Instruction # 4 was neither inconsistent nor misleading.

█ The appellants also object to the giving of Yurko's Instruction # 5, which stated,

> You are instructed that if you find for the plaintiff on the questions of liability, you are further instructed that in determining any amount of damages, you must exclude from your consideration all damage for any personal ailment or physical impairment, if any, and any pain and suffering arising from the gunshot wound itself, which would be unrelated to any *claim of delayed treatment* on the part of the defendants of Phillip McAllister. (emphasis added).

This instruction was erroneous because it failed to include improper treatment as a theory of recovery. Several factors, however, minimized its prejudicial effect. First, because the jury found no liability, they did not reach the issue of damages. Second, instructions addressing the issue of improper treatment were included elsewhere throughout the charge. Finally, the appellants' failed to voice any objection at trial to the giving of this instruction.

█ Rule 61 of the West Virginia Rules of Civil Procedure provides, "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of parties." In Syllabus Point 2 of *Boggs v. Settle,* 150 W.Va. 330, 145 S.E.2d 446 (1965), this Court stated,

"On appeal of a case involving an action covered by the Rules of Civil Procedure, this Court will disregard and regard as harmless any error, defect or irregularity in the proceedings in the trial court which does not affect the substantial rights of the parties." *See also Ilosky v. Michelin Tire Corp.,* 172 W.Va. 435, 307 S.E.2d 603 at 618–19 (1983); *Butler's Discount Auto Sales, Inc. v. Roberts,* 172 W.Va. 83, 303 S.E.2d 722 (1983); *Talkington v. Barnhart,* 164 W.Va. 488, 264 S.E.2d 450 (1980); *Johnson v. Huntington Moving & Storage, Inc.,* 160 W.Va. 796, 239 S.E.2d 128 (1977); *Pioneer Co. v. Hutchinson,* 159 W.Va. 276, 220 S.E.2d 894 (1975); *Crusenberry v. Norfolk & Western Ry. Co.,* 155 W.Va. 155, 180 S.E.2d 219 (W.Va.1971). Because the jury did not reach the issue of damages, the failure to include one of the appellants' theories of recovery in a damage instruction was rendered harmless.

Although, if narrowly construed, Yurko's Instruction # 5 would prevent an award of damages for injuries suffered as the result of improper treatment, the inclusion of instructions concerning improper treatment throughout the charge diminished the likelihood of such a construction by the jury.[3] In Syllabus Point 8 of *Abdulla v. Pittsburgh and Weirton Bus Co.,* 158 W.Va. 592, 213 S.E.2d 810 (1975), this Court stated, "A charge to the jury must be considered in relation to the whole case, and if it is apparent that mere technical errors in instructions could not have misled the jury, such errors will be treated as surplusage

---

3. The terms delayed treatment and improper treatment appeared four other times in the trial court's instructions to the jury. On all four occasions, each of these terms were immediately adjacent to one another. Yurko's Instruction # 3, which was given by the trial court, read, "plaintiffs' burden of proof applies to their claim of damages as well as to their claim on the issue of whether or not *treatment was delayed or was improper* ... it is plaintiffs' obligation to prove by preponderance of the evidence that the loss of Phillip McAllister's leg was sustained as a direct and proximate result of the *delay in treatment or improper treatment* ...." (emphasis added). Additionally, McAllisters' Instruction # 4, which was also given by the trial court, read, "If ... you should find ... that the plaintiff, Phillip McAllister, by reason of *improper treatment or the delay* occasioned by the defendant hospital's failure to properly and

timely treat him, sustained amputation of his leg ...." (emphasis added). Finally, in giving Yurko's Instruction # 8, the trial court stated, "the fact that treatment failed to save the leg of Phillip McAllister does not raise a presumption of lack of proper care, skill or diligence, but to the contrary, the plaintiff must prove that the *treatment or lack of treatment or delay of* treatment by the defendant or defendants was not in accordance with the standard of care ...." (emphasis added). Therefore, it was clear to the jury that the appellants' allegations of negligence were based both on delayed and improper treatment. It is highly unlikely that the minor omission of the term improper treatment would have prevented the jury from awarding damages upon the theory of recovery had they reached the issue given the juxtaposition of both theories of recovery throughout the charge.

and harmless to the efficacy of the verdict." It is difficult to think of a more appropriate case for the application of this surplusage rule than the present one.

A final factor militating against the appellants' current allegation of error is their failure to voice any objection to the giving of this instruction at trial. Rule 51 of the West Virginia Rules of Civil Procedure provides, "No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection ...." *See also Mollohan v. Black Rock Contracting, Inc.,* 160 W.Va. 446, 235 S.E.2d 813 (1977); *Casto v. Martin,* 159 W.Va. 761, 230 S.E.2d 722 (1976); *First Nat'l Bank of Ronceverte v. Bell,* 158 W.Va. 827, 215 S.E.2d 642 (1975); *Parker v. Knowlton Const. Co., Inc.,* 158 W.Va. 314, 210 S.E.2d 918 (1975); *Jordan v. Bero,* 158 W.Va. 28, 210 S.E.2d 618 (1974); *Chambers v. Smith,* 157 W.Va. 77, 198 S.E.2d 806 (1973); *Graham v. Wriston,* 146 W.Va. 484, 120 S.E.2d 713 (1961). The only exception to the requirement in Rule 51 is when the instruction given involves "plain error." Apparently, improper treatment language was added to this instruction after an objection by the appellants when the instructions were being argued. When they were typed in their final form, however, the addition was omitted. In the context of the instruction as a whole, this omission was minor and did not constitute plain error. Therefore, because the jury did not reach the issue of damages, because the plaintiffs' theory of improper treatment was included throughout the charge, and because the plaintiffs' failed to voice any objection at trial to the giving of this instruction, this minor omission did not constitute reversible error.

The final assignment of instructional error is the trial court's refusal to give appellants' Instruction 9 [4] on the issue of abandonment. It is well established in West Virginia that "Where [in a trial by jury] there is competent evidence tending to support a pertinent theory in the case, it is the duty of the trial court to give an instruction presenting such theory when requested to do so." Syl. pt. 3, *Blackburn v. Smith,* 164 W.Va. 354, 264 S.E.2d 158 (1980), *quoting,* syl. pt. 3, *State v. Foley,* 128 W.Va. 166, 35 S.E.2d 854 (1945); *see also Adkins v. Whitten,* 171 W.Va. 106, 297 S.E.2d 881 (1982); *Sayre v. Stevens Excavating Co.,* 163 W.Va. 324, 256 S.E.2d 571 (1979); *McMillen v. Dettore,* 242 S.E.2d 459 (W.Va.1978). It is equally well established in West Virginia, however, that, "An instruction which does not correctly state the law is erroneous and should be refused." Syl. pt. 3, *West Virginia Dept. of Highways v. Buckley,* 164 W.Va. 77, 260 S.E.2d 826 (1979), *quoting,* syl. pt. 2, *State v. Collins,* 154 W.Va. 771, 180 S.E.2d 54 (1971); *see also Cross v. Trapp,* 170 W.Va. 459, 294 S.E.2d 446 (1982); *State Road Commission v. Darrah,* 151 W.Va. 509, 153 S.E.2d 408 (1967); *Winters v. Campbell,* 148 W.Va. 710, 137 S.E.2d 188 (1964); *Maynard v. National Fire Ins. Co.,* 147 W.Va. 539, 129 S.E.2d 443 (1963); *Payne v. Kinder,* 147 W.Va. 352, 127 S.E.2d 726 (1962); *Overton v. Fields,* 145 W.Va. 797, 117 S.E.2d 598 (1961).

Appellants' proffered instruction was erroneous in its failure to include a proximate cause element. It would have allowed the jury to find for the plaintiffs without finding that any abandonment on the part of the defendants *caused* an aggravation of McAllister's existing injuries. As in other types of medical malpractice cases, "in order for recovery to be obtained on account of the abandonment by a physician of the treatment of a patient, the

---

4. The Court instructs the jury that the unwarranted abandonment of a patient by a physician or hospital, after they have undertaken care of a patient, is malpractice. If you find from a preponderance of the evidence that either the defendant physician or defendant hospital or both of them, had undertaken treatment of the plaintiff in this case, that the plaintiff, Phillip McAllister's situation required continued medical care, and that the defendants, or either of them, abandoned the patient, when they knew or ought to have known, in the exercise of reasonable care, of this need for continued care and treatment, you may find that the party or parties so abandoning the said plaintiff, Phillip McAllister, were negligent.

plaintiff must show that such abandonment was a proximate cause of the injury for which redress in damages is sought ....'' Annot., Liability of Physician Who Abandons Case, 57 A.L.R.2d 432, 443 (1958). West Virginia's abandonment cases follow this line of reasoning. *See, e.g., Maxwell v. Howell,* 114 W.Va. 771, 174 S.E. 553 (1934); *Howell v. Biggart,* 108 W.Va. 560, 152 S.E. 323 (1930); *Young v. Jordan,* 106 W.Va. 139, 145 S.E. 41 (1928); *Lawson v. Conaway,* 37 W.Va. 159, 16 S.E. 564 (1892); *see also* Farrell, *The Law of Medical Malpractice in West Virginia,* 82 W.Va.L.Rev. 251, 271 (1979) ("Liability based upon abandonment still requires that the plaintiff sustain his burden of proof by showing that the injury was proximately caused by the absence of the physician at the time and place in question."). The appellants' failure to include a proximate cause element in their proposed abandonment instruction justified the trial court's refusal to give it to the jury.

■ In addition to the erroneousness of the statement of law contained in appellants' proposed abandonment instruction, it is apparent that the theory of abandonment was sufficiently addressed in instructions dealing with delayed and improper treatment anyway. As previously noted, it is not error for a trial court to refuse to give an instruction "if the principle stated in the instruction refused is adequately covered by another instruction or other instructions given." *Jennings v. Smith, supra* 165 W.Va. at 791, 272 S.E.2d at 229. In the present case, the trial court's numerous instructions on delayed and improper treatment more than adequately covered any theory of abandonment supported by the evidence.[5]

The appellants' final assignment of error concerns the trial court's refusal to direct a verdict as to the issue of the defendants' negligence. For support of the proposition that the issue of negligence should have been directed in this case, appellants rely upon Syllabus Point 3 of *Thomas v. Ramey,* 156 W.Va. 191, 192 S.E.2d 873 (1972), *quoting,* syl. pt. 6, *Preston County Coke Co. v. Preston County Light and Power Co.,* 146 W.Va. 231, 119 S.E.2d 420 (1961), in which this Court stated, "When the evidence, though conflicting as a whole, embraces uncontradicted facts and circumstances which cause the case to turn in favor of one of the parties so that a verdict adverse to such party can not stand, the court should direct a verdict in his favor." *See also Walton v. Given,* 158 W.Va. 897, 215 S.E.2d 647 (1975); *Wager v. Sine,* 157 W.Va. 391, 201 S.E.2d 260 (1973); *Jones, Inc. v. W.A. Wiedebusch Plumbing & Heating Co.,* 157 W.Va. 257, 201 S.E.2d 248 (1973).

■ Of equal importance, however, is the proposition that, "Questions of negligence, due care, proximate cause and con-

---

5. As noted previously, the term delay in treatment or other words to that effect were mentioned five times in the trial court's instructions to the jury. Furthermore, Weirton General's Instruction # 6a, as given by the trial court, explained the types of attention owed McAllister by the defendants at various points in the treatment process:

> The Court instructs the jury that under the law of this State a temporarily licensed physician can only practice can only practice medicine in a hospital facility under the direction and supervision of an attending staff physician and that once an attending staff physician has taken responsibility for a patient, the obligations of the temporarily licensed physician and other hospital personnel becomes that of properly reporting the plaintiff's condition or reporting any adverse changes in the patient's condition in a timely manner and carrying out the directions of the attending physician in a proper manner.

> Therefore, if you believe from a preponderance of the evidence in this case that Dr. Leonard E. Yurko, during the course of the evening of July 3, 1976 and the early morning hours of July 4, 1976, had accepted responsibility for Phillip McAllister, you should return a verdict in favor of Weirton Hospital Company unless you further find from a preponderance of the evidence that Dr. Torres or the other hospital personnel failed to properly report the Plaintiff's condition or to report any adverse changes in a timely manner or failed to properly carry out the directions of Dr. Yurko so as to create the circumstances which proximately resulted in the amputation of the leg on August 2, 1976.

Other instructions given further elaborated on the duty of both defendants to provide continuous treatment at various stages of the medical process. The instructions made clear that any delay in treatment which proximately caused the amputation of McAllister's leg would impose liability upon the defendant causing such delay.

current negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syl. pt. 1, *Ratlief v. Yokum,* 167 W.Va. 779, 280 S.E.2d 584 (1981), *quoting,* syl. pt. 5, *Hatten v. Mason Realty Co.,* 148 W.Va. 380, 135 S.E.2d 236 (1964); *see also Donta v. Harper,* 168 W.Va. 237, 283 S.E.2d 921 (1981); *Gallagher v. City of Westover,* 167 W.Va. 644, 280 S.E.2d 330 (1981); *Brown v. Bluefield Mun. Bldg. Comm'n,* 167 W.Va. 318, 280 S.E.2d 101 (1981); *Hovermale v. Berkeley Springs Moose Lodge No. 1483,* 165 W.Va. 689, 271 S.E.2d 335 (1980); *Board of Education v. Van Buren and Firestone, Architects, Inc.,* 165 W.Va. 140, 267 S.E.2d 440 (1980); *Wise v. Crown Const. Co., Inc.,* 164 W.Va. 393, 264 S.E.2d 463 (1980); *Bradley v. Sugarwood, Inc.,* 164 W.Va. 151, 260 S.E.2d 839 (1979); *Sullivan v. Billey,* 163 W.Va. 445, 256 S.E.2d 591 (1979).

Although it is uncontroverted in this case that there was some confusion and delay in the treatment of Phillip McAllister, there was a great deal of conflict concerning whether the activities or omissions of either of the defendants constituted negligence. Competent experts testified on behalf of the plaintiffs that the type of treatment administered, along with the delay in transfer, increased the likelihood of the eventual amputation. Likewise, competent experts testified that the treatment administered at Weirton General did not increase the likelihood of amputation.[6] While a great deal of this testimony went to the issue of proximate cause, it also addressed the issue of whether the activities of either or both of the defendants breached a duty of care owed Phillip. When viewed as a whole, the testimony was such that reasonable men could draw different conclusions from the evidence presented. Therefore, the trial court was justified in abstaining from invading the province of the jury and refusing to direct a verdict as to the defendants' negligence.

Accordingly, for the foregoing reasons, we affirm the judgment of the Circuit Court of Hancock County.

Affirmed.

---

6. In perhaps the most direct statement of the defendants' position, Dr. Charles D. Hershey, clinical professor of surgery at West Virginia University, a board certified general surgeon for almost forty years, who has extensive experience in revascularization, including the grafting of arteries in gunshot wound cases, was asked by appellants' counsel, "Are you saying that you can sit there and say that at the moment that gun went off that the fate of this young man's leg was determined?"; to which he responded, "I think it was."