383 S.E.2d 305

**Lawrence CASTEEL**

v.

**CONSOLIDATION COAL CO.**

No. 18854.

Supreme Court of Appeals of West Virginia.

July 3, 1989.

C. David Morrision, David M. Hammer, Clarksburg, W.Va., Richard J. Klein, Consolidation Coal Co., Pittsburgh, Pa., for appellant.

Allan N. Karlin, Charles R. DiSalvo, Morgantown, W.Va., for appellee.

NEELY, Justice:

Consolidation Coal Company appeals from a jury verdict that found they had discriminated against Lawrence Casteel because of his handicap and awarded Mr. Casteel $147,000 in back pay, $433,000 in front pay and $58,403.90 in attorneys' fees. On appeal Consolidation Coal Company (Consol) contends that although Mr. Casteel has a problem with his knees, they discharged Mr. Casteel for a safety violation. Mr. Casteel presented substantial evidence that Consol's safety reason was a pretext and the real reason for his discharge was discrimination. Because we agree that Mr. Casteel was discriminated against because of his handicap, we affirm the decision of the Circuit Court of Monongalia County.

Mr. Casteel was hired by Consol in 1964, became a salaried non-union employee in 1965 and was promoted to assistant shift foreman in 1981. In 1972 Mr. Casteel began experiencing problems with his knees and by 1981 his degenerative joint disease was so severe that surgery was required. Mr. Casteel elected to have tibial osteotomies (removal of a wedge of bone to alter the alignment in the joint), rather than joint replacements that would have ended his career as a coal miner. Because of his surgeries, Mr. Casteel was unable to work for three months in 1981 and almost seven months in 1982–83. Even after Mr. Casteel returned to work, he continued to experience difficulty in walking and had substantial pain. James Wiley, M.D., Mr. Casteel's orthopedic surgeon, said that Mr. Casteel could work through the pain because he was a stoic.

Before he returned to work after his second surgery, Mr. Casteel was demoted to the position of track foreman. Consol's decision to demote Mr. Casteel occurred after they were notified of his return to work. The reason for the demotion was unclear because none of Mr. Casteel's supervisors had indicated that he was dissatisfied with his work. However, Clarence Amick, Consol's general mine superintendent, indicated that Mr. Casteel was living with a female employee. One superintendent explained to Mr. Casteel that the track foreman position would be easier on his knees. However, Mr. Casteel did not request or require any accommodation. But when Mr. Casteel missed one day of work after walking five miles inside the mine, a superintendent contacted him at home and told him that he was supposed to work "at all times." In early October 1984, Mr. Casteel told Consol that he needed to take a day off to see Dr. Wiley.

The incident that Consol contends led to Mr. Casteel's discharge, occurred on 26 October 1984, near the end of the shift when the portal bus transporting Mr. Casteel and three members of his crew stopped working on the main haulage track of the mine. Mr. Casteel yelled to the operator of a trailing supply train to push the bus. The operator said he would rather pull the bus, but Mr. Casteel, again, ordered him to push the bus. The push caused the bus to lurch forward, jump the track and hit several arch supports. There were no serious injuries, and only one member of the crew was even checked at a hospital. That same morning, Mr. Amick discharged Mr. Casteel.

On appeal Consol contends that Mr. Casteel, as a matter of law, cannot be considered handicapped; the trial court made several errors requiring reversal; and the damages awarded were inappropriate. After carefully reviewing the record, we find that the trial court did not err and, therefore, affirm the decision of the Circuit Court of Monongalia County.

I

█ *W. Va. Code*, 5–11–3(t) [1987] defines handicap as follows:

The term "handicap" means any physical or mental impairment which substantially limits one or more of an individual's major life activities.

In Syllabus Point 3, *Ranger Fuel Corp. v. West Virginia Human Rights Comm'n.* 180 W.Va. 260, 376 S.E.2d 154 (1988), we required the definition of "handicap," as specific in *W. Va. Code*, 5–11–3(t) [1987], "to be strictly construed in order to assist individuals with substantial handicaps [in order

to allow] proper accommodation of the interest of handicapped individuals, other employees, the employer and the public." In *Ranger Fuel* a candidate for a job in low coal with psoriatic lesions was not considered handicapped. We held in *Ranger Fuel* that the legislature clearly intended to limit the protection of the Human Rights Act to those individuals with substantial handicaps.

■ In the present case, Consol argues that Mr. Casteel is not entitled to the protection of the Human Rights Act, as a matter of law, because his impairment does not substantially limit any of his major life activities. However, unlike the complainants in both *Ranger Fuel, supra,* and *Chico Dairy Co. v. West Virginia Human Rights Comm'n.,* 181 W.Va. 238, 382 S.E.2d 75 (1989), Mr. Casteel's impairment limits his ability in any work setting because his condition affects walking and causes substantial pain. The record indicates that Mr. Casteel has had major surgery on his knees and, in spite of the surgery, he continues to experience substantial difficulty. Mr. Casteel's problems are not limited to special situations; he even "hurts normal" when he sits. Dr. Wiley, Mr. Casteel's surgeon, testified that Mr. Casteel's knees were "severe" and that he was in constant pain. Mr. Casteel's desire to work was shown when he chose tibial osteotomies over joint replacements because, as long as he could endure the pain, the tibial osteotomies would allow him to continue to work as a miner.

Consol offered no evidence regarding the effect of Mr. Casteel's impairment on his ability to walk, but rather argues that because Mr. Casteel could work without accommodation he is not handicapped. Con-

sol's attempt to incorporate a requirement for accommodation within the definition of handicap is not justified by *W.Va.Code,* 5–11–3(t) [1987].[1] In *Chico Dairy* and *Ranger Fuel,* we required a strict construction of the statute and refused to expand the statutory definition of handicap. A strict construction of the statute also requires that the statutory definition of handicap not be limited by grafting additional requirements, such as a need for accommodation, onto the definition. In the present case, because Mr. Casteel's degenerative joint disease substantially limits his ability to walk, we find that Mr. Casteel is a handicapped person within the definition of the Act.

## II

Consol argues that the trial court erred in allowing the jury to receive, in addition to the statutory definition of handicap, an instruction which impermissibly broadened the definition of handicap. The instruction, proposed by counsel for Mr. Casteel and objected to by Consol, followed a rule of the West Virginia Human Rights Commission that broaden the definition of a "handicapped person" to include "a person who either: ... (b) has a record of such handicap; or (c) is regarded as having such a handicap."[2]

■ In Syllabus Point 6, *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984), we stated:

Where a jury returns a general verdict in a case involving two or more liability issues and its verdict is supported by the evidence on at least one issue, the verdict will not be reversed, unless the defen-

---

1. *W.Va.Code,* 5–11–9(i)(4) [1981] imposes an obligation on employers to make reasonable accommodations, if necessary, in order to assure handicapped individuals have an opportunity for employment.

2. At the time the trial court used this rule of the West Virginia Human Rights Commission, the rule appeared to be a correct statement of the law. However, we recently decided in *Ranger Fuel* and *Chico Dairy* that the rules and regulations of the West Virginia Human Rights Commission must faithfully reflect the language of

the statute. In the present case, this instruction broadening the statute was harmless because Mr. Casteel contended that he was handicapped under the statutory definition and did not rely upon either a record of a handicap or being regarded as having a handicap.

*See Chico Dairy, supra* for a detailed discussion of the rule of the West Virginia Human Rights Commission, 6 *W.Va.Code of State Rules* § 77–1–2.7 [1982] that attempted to broaden the definition of handicap.

dant has requested and been refused the right to have the jury make special findings as to his liability on each of the issues.

*Keller v. Hartman,* 175 W.Va. 418, 333 S.E.2d 89 (1985); *McClung v. Marion County Comm'n.,* 178 W.Va. 444, 360 S.E.2d 221 (1987).

In the present case, although one of the issues or causes given to the jury was insufficient, the verdict is supported by evidence demonstrating that Mr. Casteel meets the more limited statutory definition of handicap. Because there was no request by Consol for a special finding, the verdict will not be reversed.

### III

■ Consol argues that the trial court failed properly to instruct the jury on evidentiary standards and thereby, improperly relieved the plaintiff of his burden of proof. Specifically Consol contends that the trial court failed to give their amended instruction number 11 that discussed the plaintiff's burden of proof, to show by a preponderance of the evidence that the legitimate and nondiscriminatory reason offered by the defendant was a pretext for the unlawful discrimination.[3] When the instructions to the jury in the present case are read as a whole, it is clear that the jury was instructed that the plaintiff had the burden of proving that Consol's decision to discharge Mr. Casteel was based, in whole or in part, on his handicap. In fact, the jury was instructed, over and over again, that the burden of proof rested solely on the plaintiff. In Syllabus Point 3, *McAllister v. Weirton Hosp. Co.,* 173 W.Va. 75, 312 S.E.2d 738 (1983) we reiterated:

"Instructions must be read as a whole, and if, when so read, it is apparent they

could not have misled the jury, the verdict will not be disturbed, though one of said instructions which is not a binding instruction may have been susceptible of a doubtful construction while standing alone." Syl. pt. 3, *Lambert v. Great Atlantic & Pacific Tea Company,* 155 W.Va. 397, 184 S.E.2d 118 (1971).

### IV

Consol contends that the trial court erred in admitting into evidence the Federal Mine Safety and Health Agency (MSHA) citations and orders. Consol contends that Mr. Casteel was fired for deliberately and intentionally violating state and federal safety laws by placing himself and members of his crew at risk by ordering the portal bus in which they were riding to be pushed.[4] In order to demonstrate that the safety reason offered by Consol was a pretext for discrimination, Mr. Casteel examined Consol's operating procedure when a salaried worker was alleged to have engaged in an unsafe mining practice. Mr. Casteel used the MSHA citations and orders during the cross-examination of Mr. Amick, the general superintendent of the mine, to demonstrate the reaction of Consol to notices of potentially serious safety violations.

On appeal Consol argues that MSHA records constitute hearsay and are untrustworthy. *W.Va.R.Evid.* 801(c) defines hearsay as "statement ... offered in evidence to prove the truth of the matter asserted." Consol contends that the MSHA records were used in cross-examination in such a manner that the contents of the records were assumed to be true. However, the MSHA records were not admitted to prove the truth of their contents but rather to examine the reaction of Consol to allegations concerning safety. Although Mr.

---

3. Consol's amended instruction 11 contained three long paragraphs and restated the defense's theory several times. Although two sentences contained a correct statement of the law, most of the offered instruction is an argument in support of the defense's theory. An instruction that is argumentative need not be given as it may mislead the jury. *See Orr supra,* 173 W.Va. at 353, 315 S.E.2d at 611; *Thornton v. CAMC,* 172 W.Va. 360, 368, 305 S.E.2d 316, 325 (1983).

*See Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 170–172, 358 S.E.2d 423, 429–431 (1986) for fact specific tests to determine discriminatory discharge.

4. 30 C.F.R. §§ 75.1403.7 (1988) states that "Mantrips should not be pushed." Coal cars hauling people are called "mantrips." *W.Va.Code,* 22A-2-37-38 [1986] direct that mantrips not be pushed.

Amick acknowledged that more than 2500 MSHA citations had been issued since January 1, 1980, he stated that not one citation led to any form of discipline against a salaried employee. In fact Consol acknowledged that before Mr. Casteel's discharge Consol had never fired anyone for safety reasons!

Consol's argument that the MSHA records are not trustworthy is not dispositive because the MSHA records were not used to prove the ultimate issues submitted to the jury, but were used to show the pattern of Consol's reaction to safety concerns.[5]

V

Consol argues that the trial court erred in allowing John Cox to testify after granting its motion *in limine* precluding the plaintiff from calling an unidentified safety expert. We note that Consol's motion *in limine* applied only to an unidentified expert because of "the inability of Consol to adequately prepare for that witness's testimony." Consol was notified that Mr. Casteel intended to call Mr. Cox as a witness and Consol had deposed Mr. Cox on the very matters that Consol now contends constituted an "ambush."

Mr. Cox, a U.M.W.A. miner and a member of the union safety committee, testified about several incidents involving alleged safety violations and Consol's reactions to the allegations.[6] Mr. Cox's testimony was from his personal knowledge. Mr. Cox was not permitted to testify as an expert witness and give his opinion on the safety

implication of the incident involving Mr. Casteel.

■ In Syllabus Point 3, *Cochran v. Appalachian Power Co.*, 162 W.Va. 86, 246 S.E.2d 624 (1978), we reaffirmed that:

"The determination of whether a witness has sufficient knowledge of the matter in question so as to be qualified to give his opinion is largely within the discretion of the trial court and will not ordinarily be disturbed on appeal unless clearly and prejudicially erroneous." Syl. pt. 4, *Cox v. Galigher Motor Co.*, [158] W.Va. [685] 213 S.E.2d 475 (1975).

*See also W.Va.R.Evid.*, Rule 701; *Dawson v. Casey*, 178 W.Va. 717, 364 S.E.2d 43 (1987). Because the record does not reflect that Consol was prejudiced by allowing Mr. Cox to testify about matters within his personal knowledge, we find the trial court did not err in allowing Mr. Cox to testify.

VI

■ Consol argues that several comments made by the trial court were highly prejudicial to Consol and denied them a fair trial. Specifically Consol describes four separate instances.[7] We note that in three of the instances Consol made no objection at the time and none of the instances affected the substantial rights of Consol. In Syllabus Point 4, *McAllister v. Weirton Hosp. Co.*, 173 W.Va. 75, 312 S.E.2d 738 (1983), we stated:

"On appeal of a case involving an action covered by the Rules of Civil Procedure, this Court will disregard and regard as harmless any error, defect or irregularity

5. Consol attempts to draw an analogy between the MSHA records and traffic citations in order to show that the MHSA records are irrelevant. Although in the cases cited by Consol, the traffic citations were considered irrelevant on the issue of negligence, Mr. Casteel's use of the MHSA records is not similar and therefore, does not raise similar concerns.

6. One incident, described by Mr. Cox, involved a salaried employee who allegedly failed to disconnect an electrical cable before working on it. Mr. Cox first reported the incident to several of Consol's supervisors. When Mr. Cox failed to receive Consol's answer within the prescribed period, he reported the incident to a state inspector. The state investigation resulted in an

individual personal assessment (fine) against the salaried employee. However, the salaried employee was not disciplined by Consol in any way, but was promoted from "fill-in boss to full-time boss."

7. The four instances cited by Consol are: (1) a bench conference remark about the evasiveness of Mr. Amick; (2) an interjection by the trial court questioning the failure of Consol's witness to use the term "comp days;" (3) a bench comment on West Virginia's expert witness qualification requirements; and (4) an interruption by the trial court questioning the evidence being discussed during the closing statement of Consol's lawyer.

in the proceedings in the trial court which does not affect the substantial rights of the parties." Syl. pt. 2, *Boggs v. Settle*, 150 W.Va. 330, 145 S.E.2d 446 (1965).

Finally, we note that the trial court attempted to cure any error by instructing the jury to disregard any comment that the court may have "interjected ... into the case." Based on our careful review of the record we find no reversible error.

## VII

■ Consol argues that the trial court erred in awarding front pay because *W.Va. Code*, 5–11–10 [1987] does not specifically mention that a court may order front pay to remedy the effects of unlawful discrimination.[8] Consol's argument is disingenuous because (1) *W.Va.Code*, 5–11–10 [1987] states that a court may order "such affirmative action, including, but not limited to hiring, reinstatement or upgrading of employees ..."; and (2) Consol opposed Mr. Casteel's request for reinstatement. Even after the verdict determining that Mr. Casteel had been the victim of a discriminatory discharge, Consol insisted on its right to oppose reinstatement. Consol elected front pay rather than reinstatement.

■ Consol also objected to the front pay awarded as speculative because they contended that Mr. Casteel's knees were so bad that he would probably require total joint replacements before he reached age 62, the presumed date of retirement. Consol's argument was presented to the jury and the jury was properly instructed on damages. We have consistently held that:

"It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed." Point 2, syllabus, *Skeen v. C and G Corporation*, [155] W.Va. [547]

[185 S.E.2d 493] (Decided by this Court December 14, 1971).

Syllabus Point 4, *Young v. Ross*, 157 W.Va. 548, 202 S.E.2d 622 (1964). *See also* Syllabus Point 6, *McAllister v. Weirton Hosp. Co.*, 173 W.Va. 75, 312 S.E.2d 738 (1983); Syllabus Point 1, *Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584 (1981); Syllabus Point 5, *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964).

## VIII

■ Finally Consol argues that the $58,-403.90 awarded in attorneys' fees was clearly excessive. We disagree. Recently we discussed the determination of reasonable attorneys' fees in human rights cases in Syllabus Point 3, *Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 380 S.E.2d 238 (1989):

When the relief sought in a human rights action is primarily equitable, "reasonable attorneys' fees" should be determined by (1) multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate—the lodestar calculation—and (2) allowing, if appropriate, a contingency enhancement. The general factors outlined in Syllabus Point 4, *Aetna Cas. & Sur. Co. v. Pitrolo*, [176] W.Va. [190] 342 S.E.2d 156 (1986) should be considered to determine: (1) the reasonableness of both time expended and hourly rate charged; and, (2) the allowance and amount of a contingency enhancement.

■ In the present case, Mr. Casteel's counsel requested an hourly rate of $150; the trial court approved a compromise rate of $130 per hour for Allan N. Karlin and $110 per hour for Charles DiSalvo. Consol challenges the compromise hourly rate and not the number of hours submitted by Mr. Casteel's counsel. In *Bishop*, we looked to the general factors outlined in Syllabus Point 4, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986) to determine the reasonableness of attorneys'

---

**8.** Front pay represents the difference between what an employee would have earned from his former employer had he not been fired and what he can expect to earn in any employment in the future. *See* Annot., 44 A.L.R. 4th 1174 (1986).

fees.[9] Consol contends that the following factors were not considered and require a reduced hourly rate: (1) customary fee; (2) preclusion of other employment; (3) undesirability of the case; and (4) risk of no recovery. We note that *Bishop* does not contemplate that every factor listed in *Aetna* be considered in determining the reasonableness of attorneys' fees.

In *Bishop, Id.* 181 W.Va. at 82, 380 S.E.2d at 249, we discussed the customary fee in human rights cases and determined that the $110 per hour rate of counsel for Ms. Salyers was not unreasonable. Indeed we stated that the $110 per hour rate "was comparable—and perhaps even below—what a young partner in a major firm headquartered in Charleston would charge for a case conducted in southern West Virginia". *Id.* In *Bishop* we also noted that the employer was represented by a distinguished Charleston law firm. *Id.* In the present case, the compromise rate for Mr. DiSalvo, a distinguished professor at West Virginia University College of Law, is the same as the rate approved in *Bishop*. The compromise rate for Mr. Karlin, a skilled trial advocate in the field of employment discrimination, although slightly higher, is not unreasonable. We also note that the employer was represented by a distinguished West Virginia law firm and counsel from Pittsburgh. Both sides presented excellent briefs in this Court, so we may take notice of the high quality of counsel on both sides.

Our review of the record indicates that the other factors which Consol contends require a reduced hourly rate for counsel for Mr. Casteel do not justify any reduction. As counsel for Mr. Casteel, Mr. DiSalvo spent 237.9 hours and Mr. Karlin, 249.79 hours. The time and effort spent by

Mr. Casteel's counsel indicates that they were precluded from other employment. The risk of loss and the undesirability of this case is shown by the three and a half years spent on the case and the thorough representation given by employer's counsel.[10]

In the present case we find the attorneys' fees and expenses are reasonable and supported by the record; accordingly, they are affirmed with regard to the amount charged up to the time the trial court entered it final order. In addition to the attorneys' fees awarded, Mr. Casteel is entitled to attorneys' fees for services rendered on this appeal because he has prevailed in this Court. Syllabus Point 2, *Orndoff v. West Virginia Dept. of Health,* 165 W.Va. 1, 267 S.E.2d 430 (1980); *Barnes v. Public Sevice Comm'n.,* 172 W.Va. 232, 304 S.E.2d 685 (1983); *Bishop, supra,* 181 W.Va. at 83, 380 S.E.2d at 250. For that reason the case is remanded to the Circuit Court of Monongalia County for entry of an appropriate order regarding those fees.

Accordingly, for the reasons set forth above the judgment of the Circuit Court of Monongalia County is affirmed and the case is remanded to the Circuit Court of Monongalia County for further proceeding consistent with this opinion.

**Affirmed and remanded.**

---

**9.** Syllabus Point 4 of *Aetna, supra* lists the following broad factors:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

**10.** The compromise hourly rate approved by the trial court does not include a contingency enhancement although the compromise hourly rate according to the trial court does reflect "the contingent nature of the attorney [sic] fee agreement". See *Bishop, Id.* 181 W.Va. at 82, 380 S.E.2d at 249 for a discussion of contingency enhancement.