**Christopher LACK, Plaintiff,**

v.

**WAL–MART STORES, INC., et al., Defendants.**

No. Civ.A. 5:96–0462.

United States District Court, S.D. West Virginia, Beckley Division.

July 13, 1999.

---

Susan M. Fedorchko and James B. Lees, Jr., Hunt & Lees, Charleston, WV, for plaintiff.

Roger A. Wolfe and Kelly L. Mount, Jackson & Kelly, Charleston, WV, for Wal–Mart.

Gene W. Bailey II, McNeer, Highland, McMunn & Varner, Clarksburg, WV, for Bragg.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are (1) Defendants' motions for judgment as a matter of law or, in the alternative, for a new trial; and (2) Plaintiff's petition for attorney fees and costs. The Court **DENIES** Defendants' motions and **GRANTS** Plaintiff's petition.

### I. FACTUAL BACKGROUND

Plaintiffs Susan Willis and Christopher Lack initiated this action against Wal–Mart and their supervisor James Bragg.[1] Lack alleges Bragg sexually harassed him in violation of the West Virginia Human Rights Act (**WVHRA**).

During the relevant period, Bragg was a Wal–Mart management employee. He was transferred to Wal–Mart's Beckley store in August 1994 where he worked until April 1995. Bragg was assistant manager at the Beckley store, supervising certain departments and the managers and sales associates in those departments.

Lack was employed at Wal–Mart's Beckley store from approximately April 1992 until February 1996. Lack worked part time under Bragg's supervision. Lack testified to a pattern of harassment to which Bragg subjected him from October 1994 through April 1995. The harassment included a copious number of offensive jokes, remarks, and gestures to Lack both privately and in the presence of co-workers. Prompted by an internal complaint of sexual harassment filed by Willis,

1. Willis' claim was successfully resolved by mediation well in advance of trial.

Wal–Mart investigated Bragg's conduct and ultimately terminated him in April 1995.

Following extensive briefing on Lack's then-novel theory, and a published opinion from the Supreme Court of Appeals of West Virginia on a question certified by this Court, the case went to trial on April 13, 1999. On April 14 the jury reached a verdict in Lack's favor, awarding him $80,-000.00 in damages.

## II. DISCUSSION

### A. Defendants' Motions For Judgment as a Matter of Law and for a New Trial

There are differing standards for Defendants' motions for judgment as a matter of law and for a new trial.

■ Our Court of Appeals made the following observations on Rule 50(b) motions in *Price v. City of Charlotte*, 93 F.3d 1241 (4th Cir.1996):

In reviewing a Rule 50 determination, our review is circumscribed with respect to any facts the jury found, but plenary with respect to any legal conclusions underlying the verdict:

Judgment as a matter of law is proper "when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." The movant is entitled to judgment as a matter of law "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." While our review of this motion is plenary, it is also circumscribed because we must review the evidence in the light most favorable to [the nonmoving party].

Because federal courts do not directly review jury verdicts, constrained, as we are, by the Seventh Amendment, *the [movant] bears a hefty burden in establishing that the evidence is not sufficient to support the awards.* In determining whether the evidence supports the awards, we review the evidence, and all reasonable inferences to be drawn therefrom, in favor of Appellees. Recognizing that we may not substitute our judgment for that of the jury or make credibility determinations, if there is evidence on which a reasonable jury may return verdicts in favor of Appellees, we must affirm. While we are compelled to accord the utmost respect to jury verdicts and tread gingerly in reviewing them, we are not a rubber stamp convened merely to endorse the conclusions of the jury, but rather have a duty to reverse the jury verdicts if the evidence cannot support it.

*Id.* at 1249–50 (citations and quoted authority omitted); *Chaudhry v. Gallerizzo*, 174 F.3d 394, 405 (1999).

■ The standards applicable to a *Rule 59* motion are similarly well-settled. *Rule 59(a), Federal Rules of Civil Procedure*, provides "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States[.]" Fed. R.Civ.P. 59(a). This Court recently observed as follows in *Rice v. Community Health Ass'n*, 40 F.Supp.2d 788 (S.D.W.Va. 1999):

"On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Sys. and Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587 (4th Cir.1996) (citing *Aetna Cas. & Sur. Co. v. Yeatts*, 122 F.2d 350 (4th Cir.1941) (numerals added)).

*Id.* at 790.

■ The primary bases for Defendants' motions are Lack's putative failure to

prove either (1) the conduct complained of was sufficiently severe or pervasive to constitute actionable sexual harassment under the WVHRA; or (2) Bragg engaged in any actionable retaliatory conduct.[2]

The Court does not recount the facts adduced during the testimony. Suffice to say Lack described to the jury in detail the numerous sexually charged jokes, gestures, comments and language Bragg introduced into the workplace and directed toward Lack. Despite Defendants' attempts to recast the record, this was not a case of mere "locker-room banter" or isolated instances of inappropriate humor. Rather, Bragg's conduct more closely demonstrated an ongoing campaign of harassment actionable under the WVHRA.

The Court instructed the jury on the difference between actionable and non-actionable behavior. The jury was not only very attentive during the Court's charge, but also demonstrated their conscientiousness by way of several pointed questions to the Court on the law during their deliberations. To now enter judgment for the Defendants as a matter of law or, alternatively, to order a new trial, would deny effectively Lack's rights under the Seventh Amendment to the Constitution. The jury's determination is entitled to full deference under the circumstances of this case and the Court accords it such. Mindful of the governing standards, Defendants' motions for judgment as a matter of law or, alternatively, for a new trial are **DENIED.**

## B. Plaintiff's Petition for Attorney Fees and Costs

*West Virginia Code* section 5–11–13(c) provides, in pertinent part, as follows:

In actions brought under this section, the court in its discretion may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant.

W.Va.Code § 5–11–13(c). The Supreme Court of Appeals of West Virginia has described section 5–11–13(c) as a "fee-shifting statute[ ] designed to protect and promote various civil rights and public interests." *Hadorn v. Shea,* 193 W.Va. 350, 354, 456 S.E.2d 194, 198 n. 2 (1995). In *Bishop Coal Co. v. Salyers,* 181 W.Va. 71, 380 S.E.2d 238 (1989), the West Virginia Court stated:

The goal of the West Virginia human rights law is to protect the most basic, cherished rights and liberties of the citizens of West Virginia. Effective enforcement of the human rights law depends upon the action of private citizens who, from our observations of these matters, usually lack the resources to retain the legal counsel necessary to vindicate their rights. *Full enforcement of the civil rights act requires adequate fee awards.*

*Id.* at 80, 380 S.E.2d at 247 (emphasis added).

In making an award, Syllabus Point 3 of *Bishop* directs the Court to look to the twelve-factor test stated in Syllabus Point 4 of *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986). The twelve factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attor-

---

**2.** Defendant Wal–Mart also takes issue with (1) Lack's alleged failure to prove the harassment was because of Lack's sex; and (2) the asserted oblique nature of Lack's retaliation claim. The Court finds merit in neither contention. By example, the second assertion is purely speculative. The Court went to great pains both prior to and during trial to clarify this issue, with little help from the parties, and is now satisfied Wal–Mart's characterization is erroneous.

neys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 191–92, 342 S.E.2d at 157; *See* Syl. Pt. 6, *Casteel v. Consolidation Coal Co.*, 181 W.Va. 501, 502, 508, 383 S.E.2d 305, 306, 312 (1989) (stating "We note that *Bishop* does not contemplate that every factor listed in [*Pitrolo* ] be considered in determining the reasonableness of attorneys' fees.").

■ Plaintiff's counsel, Sharon Iskra, has requested on behalf of her client a $29,950.79 total award, of which $1,188.29 represents costs.[3] Defendants do not seriously contest Plaintiff's entitlement to fees. They do, however, take issue with Ms. Iskra's requested hourly rate. Ms. Iskra seeks a $150.00 hourly rate for her services. She submits in support of the requested fee a very detailed affidavit from attorney David Grubb, an experienced lawyer in employment-related litigation. Mr. Grubb asserts an hourly fee in the range of $150.00 to $200.00 is appropriate here. Mr. Grubb noted as well Ms. Iskra's three-person law firm "is recognized among its peers as one of the preeminent firms dealing with plaintiff's litigation in the State of West Virginia." Aff. of David Grubb at 3. Counsel for the Defendants assert their hourly rates in the vicinity of $120.00 to $130.00 are more appropriate.

The Court first examines the *Pitrolo* factors in determining the reasonableness of the time expended and the hourly rate charged. While the Court considers all twelve factors equally, several have particular application to this case.

First, Ms. Iskra expended much labor on this case. She took on the litigation with an understanding of the unsettled, and in fact confusing, nature of the law concerning same-sex harassment in both the state and federal courts. In bringing the case to judgment, she faced, *inter alia,* several rounds of hotly contested briefing in two forums and oral argument in the Supreme Court of Appeals. Her briefing and argument before the West Virginia Court resulted in the recognition of a cause of action for same-sex harassment in this State. Following the Supreme Court of Appeals' opinion, and significant further pretrial preparation, Ms. Iskra took the case through trial, post-trial motions and now an appeal.

The second factor looks to the novelty and difficulty of the questions presented. Attesting to the action's novelty, this Court rarely certifies questions to the Supreme Court of Appeals, preferring instead to exercise the jurisdiction given it by Congress and making the sometimes difficult analysis of unsettled state law based on the *Erie* framework. This case, however, presented significant questions of state public policy in addition to largely uncharted legal waters. There can thus be little question this factor weighs in favor of a substantial fee award.

The seventh factor examines the time limitations imposed by the client or the circumstances. Defendants do not challenge Ms. Iskra's assertion her "attention to this case for four years had a very real impact on her ability to prosecute other cases for Hunt & Lees, L.C. and on Hunt & Lees, L.C. itself." Pet. at 5.

■ The eighth factor looks to the amount involved and the results obtained. Ms. Iskra quite simply moved a very difficult case over several years and achieved an excellent result for her client at a jury trial. She achieved complete success.[4]

---

3. The Court notes at the outset the conservative nature of the fees requested. Defendants do not take issue with Ms. Iskra's assertion her time entries "do not recapture each and every phone call to the clients nor to opposing counsel. Nor do they recapture each and every consult Sharon Iskra made with her partner, James B. Lees, Jr. concerning the case. Nor, obviously, do these billings include any fee from James B. Lees, Jr. for any consultations." Pet. at 4 n. 1.

4. The Court was concerned initially about Ms. Iskra receiving a contingent fee in addition to a fee award from Defendants. This Court has inherent power to supervise the collection of

The tenth factor explores the undesirability of the case. Lack had no economic losses or medical expenses. The only recoverable damages were for those in the nature of emotional distress. Ms. Iskra knew she would be left to inference when it came to "black boarding" damages for the jury. She nonetheless took the case, going out on a limb, given the then-precarious legal footing of Lack's same-sex claim. She fought valiantly for several years and then prevailed, despite rigorous opposition from two respected law firms.

Considering these and the remaining factors, and after carefully examining the fee petition, the Court believes Ms. Iskra reasonably expended 191.75 hours at a reasonable hourly rate of $150.00.[5] Consequently, the Court **AWARDS** Lack attorney fees in the amount of $28,762.50 and costs in the amount of $1,188.29 for a total award of $29,950.79.[6]

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

### JUDGMENT ORDER

In accordance with the Memorandum Opinion and Order entered this day, the Court **ORDERS** as follows:

1. Defendants' motions for judgment as a matter of law or, in the alternative, for a new trial are **DENIED**;

2. Plaintiff's petition for attorney fees and costs is **GRANTED**;

3. Plaintiff is **AWARDED** attorney fees in the amount of $28,762.50 and costs in the amount of $1,188.29 for a total award of $29,950.79; and

4. This case is **DISMISSED** and stricken from the docket.

The Clerk is directed to send a copy of this Judgment Order to counsel of record.

attorneys' fees and to monitor contingent fee agreements. *Jenkins v. McCoy*, 882 F.Supp. 549, 553 (S.D.W.Va.1995). Following inquiry from the Court, Ms. Iskra filed an affidavit on the issue. She stated her firm will add to the jury's award any further Court-awarded amount for purposes of calculating the ⅓ percentage of her fee. The Court is satisfied this will be a fair resolution under the circumstances and notes it comports explicitly with *Bishop. Bishop*, 181 W.Va. at 82, 380 S.E.2d at 249 n. 10 (stating "Depending on the terms of the [contingency] contract, 'reasonable attorneys' fees' can either be taken as a credit toward the lawyer's contingent share or they can be added to the gross award and the total sum split-typically two-thirds for the plaintiff and one-third for the lawyer.").

5. The Court believes the $150.00 rate awarded is at the high end of a reasonably accepted range. Compensation at the high end of the range is warranted, however, given Plaintiff's very strong showing under the *Pitrolo* factors. Also, the Court notes, as did the West Virginia Court in *Casteel*, the presence of "high quality of counsel on both sides." *Casteel*, 181 W.Va. at 508, 383 S.E.2d at 312.

6. Ms. Iskra has spent additional time responding to Defendants' post-trial motions. That amount has not apparently been liquidated finally at the writing of this Opinion, but appears to be less than 10 hours of work and less than $100.00 in costs. The Court deems this amount compensable and, if the parties deem necessary, retains jurisdiction to modify its judgment to reflect the additional compensable amounts.